983 P.2d 748

STATE of Arizona, Appellee/Cross–Appellant.

v.

Scott Drake CLABOURNE, Appellant/Cross-Appellee.

No. CR–97–0334–AP.

Supreme Court of Arizona, En Banc.

June 18, 1999.

Janet A. Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for the State of Arizona.

Carla G. Ryan, Tucson, Attorney for Scott Drake Clabourne.

## OPINION

MARTQNE, Justice.

¶1 In November 1982, a jury convicted Scott Drake Clabourne of one count of first-degree murder, one count of kidnapping and three counts of sexual assault. He was sen-

tenced to death for the murder and to four concurrent terms of fourteen years for the remaining counts. We affirmed the conviction and sentence. *See State v. Clabourne,* 142 Ariz. 335, 690 P.2d 54 (1984) (*Clabourne I*). In September 1993, the United States District Court for the District of Arizona found ineffective assistance of counsel during the capital sentencing phase of Clabourne's trial and remanded the case for resentencing. The United States Court of Appeals for the Ninth Circuit affirmed. *Clabourne v. Lewis,* 64 F.3d 1373 (9th Cir.1995) (*Lewis*). In August 1997, Clabourne was resentenced to death for the murder and to four consecutive fourteen-year terms for the felony convictions. Appeal to this court is automatic under Rules 26.15 and 31.2(b) of the Arizona Rules of Criminal Procedure, and direct under A.R.S. § 13–4031 (1989). The State cross appealed. We affirm the death sentence but vacate the resentencing court's imposition of consecutive noncapital sentences and reinstate the original order that runs the noncapital sentences concurrently.

## I. BACKGROUND

¶ 2 The murder of Laura Webster at the hands of Clabourne, Larry Langston and Edward Carrico is undisputed and well documented in earlier decisions. *See Clabourne I; Lewis.* On the night of September 18, 1980, Webster, a twenty-two-year-old student at the University of Arizona, was approached by Clabourne and Langston at the Green Dolphin Bar in Tucson. According to Clabourne, they convinced Webster to leave with them by telling her they were going to a cocaine party. During the drive from the bar, Langston stopped the car, pulled Webster out, beat her and threw her back in the car. Webster pleaded with Clabourne to protect her. The men took Webster to a house where they forced her to remove her clothes and serve them drinks. She was repeatedly beaten and raped for approximately six hours. Webster continued to beg Clabourne for help. Eventually Clabourne strangled her with a bandanna. When she was nearly dead, he stabbed her twice with a knife, piercing her lung and heart. The men wrapped her body in a sheet and threw it

from a bridge into the dry bed of the Santa Cruz River where it was found the next day.

¶ 3 Clabourne told Shirley Martin, among others, that he had killed a woman he had met in a bar. A year after the body was discovered, Martin informed police. In October 1981, Clabourne confessed to Tucson Police Detective Luis Bustamante.

¶ 4 Clabourne was found competent to stand trial by court-appointed psychiatrists Drs. John S. LaWall and Edward S. Gelardin. Because Clabourne had advanced an insanity defense, they also examined Clabourne's mental state. Both testified at trial that he was legally sane at the time of the offense. Clabourne called Dr. Sanford Berlin, a psychiatrist who had treated him in 1975 for mental problems. Dr. Berlin said he was unable to determine what Clabourne's state of mind had been when he committed the crimes.

¶ 5 At the sentencing hearing following Clabourne's conviction, defense counsel suggested possible grounds for mitigation but gave the court no reasons to find them. In particular, counsel referred to the evidence of Clabourne's mental health presented at trial. But at trial the psychiatrists testified in terms of legal sanity; they did not address mitigation. Ultimately, the trial judge found one aggravating circumstance: that the defendant had committed the offense in an especially heinous, cruel and depraved manner. *See* A.R.S. § 13–703(F)(6) (Supp.1998). He found no mitigating factors sufficient to overcome the aggravating circumstance. In our independent review, we agreed with the trial court's evaluation of the evidence. *Clabourne I,* 142 Ariz. at 347–49, 690 P.2d at 66–68.

¶ 6 As for the others involved in the crime, Langston pled guilty to first-degree murder and was sentenced to life imprisonment. Carrico, who was not charged with murder and was convicted only of hindering prosecution, cooperated with the prosecution and was sentenced to a three-year term of probation.

¶ 7 While Clabourne's automatic appeal to this court was pending, his first petition for post-conviction relief was summarily de-

nied. He failed to seek review. In May 1985, Clabourne filed another petition for post-conviction relief. The trial court took no action on the petition and appointed new counsel to represent Clabourne. Clabourne then filed two amended petitions for post-conviction relief. In October 1986, the trial court summarily dismissed the petition and the amended petitions. This court denied Clabourne's petition for review in November 1987.

¶ 8 In March 1988, Clabourne filed a petition for writ of habeas corpus and an application for stay of execution in the district court. The district court granted the stay but dismissed the petition without prejudice because Clabourne had failed to exhaust state remedies. In June 1989, Clabourne filed another petition for post-conviction relief but the trial court found all claims waived or barred. This court denied a second petition for review in September 1990.

¶ 9 In August 1991, Clabourne filed a second petition for writ of habeas corpus that raised 104 challenges to his conviction and sentence. In September 1993, the district court held an evidentiary hearing on Clabourne's claim of ineffective assistance of counsel. The defense called the three psychiatric experts from Clabourne's trial, Drs. LaWall, Gelardin and Berlin. They were provided with a more complete history of Clabourne and more information about the crime than they had received before trial.

¶ 10 Based upon the testimony presented at the evidentiary hearing, the district court found no prejudice due to ineffective counsel during the guilt phase of the trial. But the court found that Clabourne had been prejudiced by ineffective counsel at the capital sentencing. Clabourne appealed the denial of his petition with respect to ineffective assistance at the guilt phase, and the State cross appealed the district court's grant of Clabourne's petition with respect to the penalty phase. In September 1995, the Ninth Circuit affirmed and remanded the case for resentencing. *See Lewis*, 64 F.3d 1373.

¶ 11 Instead of offering evidence at his resentencing, Clabourne relied upon his records and the transcript of the hearing before the district court. On August 14, 1997 the trial court resentenced Clabourne to death for the murder and to aggravated consecutive sentences of fourteen years of imprisonment on the kidnapping and three sexual assault counts.

## II. ISSUES

Clabourne raises the following issues:

1. Did the resentencing court fail to recognize and consider mitigating factors that taken alone or collectively were sufficiently substantial to call for leniency?

2. Did the resentencing court fail to give sufficient mitigating effect to the mitigating factors found?

3. Did the resentencing court err in refusing to preclude a witness' post-hypnotic testimony in its determination of aggravating and mitigating factors?

4. Did the resentencing judge lack, or appear to lack, impartiality due to a collateral interest in imposing the death penalty, and was he, therefore, biased against Clabourne in violation of the Fifth, Eighth, and Fourteenth Amendments?

5. Did the resentencing court err in denying Clabourne's request to preclude victim impact statements and in failing to bifurcate the capital convictions in violation of the Fifth, Eighth and Fourteenth Amendments and the Supremacy Clause?

6. Given prosecutors' unfettered discretion in determining when to seek the death penalty, did the resentencing court err in not conducting a proportionality review with sentences imposed in cases similar to this case and in finding that the sentences of the others involved in this crime were not mitigating, thereby rendering this death sentence arbitrary and capricious in violation of the Fifth, Eighth and Fourteenth Amendments?

7. Do Arizona's methods of execution violate the Eighth Amendment?

8. Did the resentencing court err in imposing consecutive terms of imprisonment for Clabourne's felony convictions when Clabourne had been sentenced to concurrent terms for the same convictions at an earlier sentencing?

¶ 12   The State cross appealed on the following issue: did the resentencing court err in finding the economic cost of the death penalty to be a mitigating factor?

## III.   ANALYSIS

### A.   Independent Review

¶ 13   In capital cases, we independently review the trial court's findings of aggravation and mitigation and the propriety of the death sentence.   A.R.S.   § 13–703.01(A) (Supp.1998).

¶ 14   This case went to the jury on both premeditated and felony murder.   The jury returned a general verdict.   It is undisputed that Clabourne killed Webster and, therefore, *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), are satisfied.

#### 1.   Aggravating Circumstances

¶ 15   This court in *Clabourne I* and both trial court judges have each independently found that the State had shown beyond a reasonable doubt that the murder of Webster was especially cruel and demonstrated a heinous and depraved state of mind in satisfaction of A.R.S. § 13–703(F)(6).   No court has found any other aggravating factors.   The State has presented no new evidence in support of an (F)(6) or any other aggravating circumstance since we last reviewed the propriety of the death penalty in this case.

¶ 16   On appeal, Clabourne does not challenge the (F)(6) finding.   The State, however, seeks to bolster the (F)(6) finding by arguing that Clabourne relished the crime; that the victim was helpless; that the murder was senseless; and that Clabourne killed to eliminate a witness.   *See State v. Ross,* 180 Ariz. 598, 605–06, 886 P.2d 1354, 1361–62 (1994) (discussing factors that support an (F)(6) finding); *State v. Gretzler,* 135 Ariz. 42, 52–53, 659 P.2d 1, 11–12 (1983).

¶ 17   Because the elements of the (F)(6) factor—"heinous, cruel, or depraved"—are stated in the disjunctive, a finding of cruelty alone is sufficient to support an (F)(6) aggravating circumstance.

*See Gretzler,* 135 Ariz. at 51, 659 P.2d at 10.   In *Clabourne I* we described the especially cruel circumstances of this murder as follows:

> [C]ruelty involves pain and distress visited upon the victim.   This distress includes mental anguish. . . .   [Here,] [Webster] suffered both mentally and physically.   She was beaten and forced to undress and serve [Clabourne] and his friends drinks.   In addition, she was raped over the course of a six hour period.   She was obviously in great fear [for] her life as she begged [Clabourne] to protect her.   The medical examiner testified that [Webster] had put up a tremendous struggle while being strangled, indicating a good deal of suffering.   This evidence was sufficient to establish cruelty.

*Clabourne I,* 142 Ariz. at 347–48, 690 P.2d at 66–67 (citations omitted).   For all of these reasons we again find that, beyond a reasonable doubt, this murder was especially cruel.   We need not reach the heinous or depraved prongs and therefore do not address the State's new arguments as to the heinousness and depravity of the murder.

#### 2.   Mitigating Circumstances

¶ 18   Neither the first sentencing judge nor this court in *Clabourne I* found any mitigating circumstances—perhaps due to Clabourne's ineffective counsel at sentencing.   At resentencing, the court found three mitigating factors had been proven by a preponderance of the evidence: the statutory mitigating circumstance of age (twenty years), A.R.S. § 13–703(G)(5) (Supp.1998);   and the two nonstatutory mitigating circumstances of (1) a passive, impulsive and easily manipulated personality, and (2) the economic cost of seeking the death penalty as compared to the cost of seeking a life sentence.

¶ 19   Clabourne argues the resentencing court failed to recognize and consider other mitigating factors that taken alone or collectively were sufficiently substantial to call for leniency.   Clabourne also claims the resentencing court failed to give sufficient mitigating effect to the three factors found and thereby abused its discretion.   On cross appeal, the State argues the resentencing court

erred in finding the economic cost of execution is a mitigating circumstance.

### a. Statutory Mitigation

#### 1. Impaired Capacity: A.R.S. § 13-703(G)(1)

¶ 20 Clabourne claims that the expert and lay testimony at the evidentiary hearing together with his medical records demonstrate that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired by mental illness. *See* A.R.S. § 13-703(G)(1). The resentencing court rejected this claim because Dr. Gelardin "testified that [Clabourne] was not suffering from a psychotic condition or episode at the time of the criminal offense." Sp. Verdict at 6. Clabourne asserts the court used Dr. Gelardin's statement out of context and disregarded other, overwhelming evidence. He contends that evidence that he had a mental illness and that he was "controlled" by Langston is sufficient to support a(G)(1) finding. The State argues that a(G)(1) circumstance has not been shown because none of the experts testified that Clabourne was significantly mentally impaired at the time he murdered Webster.

¶ 21 The record shows Drs. Gelardin and Berlin believed that Clabourne suffered from mental illness, probably schizophrenia, during the time period when the murder occurred. Dr. LaWall said Clabourne had a personality disorder. Nevertheless, all three experts agreed that there was no evidence of Clabourne's state of mind at the particular time of the offense. None could say whether he was "psychotic" when he killed Webster. None stated or implied a causal relationship between Clabourne's mental health and the murder. Neither did any nonexpert party, including Clabourne, indicate that Clabourne had lost contact with reality or acted abnormally when he participated in the crime. The record does demonstrate that Langston was a manipulative and frightening man who, for the most part, choreographed the crime and urged Clabourne to kill Webster.

¶ 22 We reject the contention that the status of having a "mental illness" necessarily means a person is impaired for the purposes of (G)(1). The statute calls for the "significant" impairment of one of two specific abilities: (1) the capacity to appreciate the wrongfulness of conduct or (2) the capacity to conform conduct to the requirements of the law. To say that all persons with a mental illness are always significantly impaired in at least one of these two specific ways is supported by neither medical evidence nor common sense.

¶ 23 In every case in which we have found the (G)(1) factor, the mental illness was "not only a substantial mitigating factor ... but a *major contributing cause* of [the defendant's] conduct that was 'sufficiently substantial' to outweigh the aggravating factors present...." *State v. Jimenez,* 165 Ariz. 444, 459, 799 P.2d 785, 800 (1990) (when voices told defendant to kill he could not control what he was doing) (emphasis added); *see also State v. Stuard,* 176 Ariz. 589, 608 n. 12, 863 P.2d 881, 892 n. 12 (1993) ("[E]vidence of causation is required before mental impairment can be considered a significant mitigating factor."); *State v. Brookover,* 124 Ariz. 38, 42, 601 P.2d 1322, 1326 (1979); *State v. Doss,* 116 Ariz. 156, 163, 568 P.2d 1054, 1061 (1977). Where we have been less explicit in announcing the causal connection between the mental illness and the murderous conduct, it was self evident. *See State v. Mauro I,* 149 Ariz. 24, 26, 716 P.2d 393, 395 (1986) (father killed his son because he believed him to be the devil), *sentence reduced in State v. Mauro II,* 159 Ariz. 186, 208, 766 P.2d 59, 73 (1988). We conclude that the status of being mentally ill alone is insufficient to support a(G)(1) finding.

¶ 24 Neither does Clabourne otherwise prove significant impairment. That he could appreciate the wrongfulness of his conduct is shown by his attempt to hide evidence of the murder: he and Langston wrapped Webster's body in a sheet, drove out of town and dropped the body in a wash. In addition, Clabourne said that he wanted to help Webster escape, demonstrating that he knew he was doing wrong. He offers no evidence that his capacity to appreciate wrongfulness was in any way impaired when he committed the crime.

¶ 25 Nor has Clabourne demonstrated that his capacity to conform his conduct to the requirements of the law was significantly impaired. He implies that his mental illness causes a passivity and paranoia that allowed Langston to control him, and therefore he was unable to resist Langston's pressure to rape and kill Webster. But he makes no showing that he was passive or paranoid to any degree of impairment or that he had actually lost any control over his conduct when he committed the murder. We agree with the resentencing court that Clabourne did not prove the G(1) factor by a preponderance of the evidence.

### 2. Duress: A.R.S. § 13–703(G)(2)

¶ 26 Clabourne claims he was under "unusual or substantial duress" when he murdered Webster. A.R.S. § 13–703(G)(2). For this mitigating circumstance to exist, "one person must coerce or induce another person to do something against his will." *State v. Castaneda*, 150 Ariz. 382, 394, 724 P.2d 1, 13 (1986). The resentencing court determined that Langston urged Clabourne to murder but that Clabourne failed to prove by a preponderance that he was under unusual or substantial duress. We agree.

¶ 27 The evidence shows that Langston was a frightening sociopath who planned the crime. However, that Langston was the mastermind and influenced, even scared, Clabourne does not in itself show (G)(2) duress. Contrary to Clabourne's claim, the evidence (including his own and Carrico's testimony) shows he was a willing and active participant and was neither induced nor coerced to act contrary to his free will.

### 3. Age: A.R.S. § 13–703(G)(5)

¶ 28 The resentencing court found Clabourne proved by a preponderance of the evidence "that he was 20 years old at the time of the murder and that his age is a mitigating circumstance." Sp. Verdict at 6; *see* A.R.S. § 13–703(G)(5). In addition to chronological age, this circumstance requires that we consider a defendant's: (1) level of intelligence, (2) maturity, (3) participation in the murder, and (4) criminal history and past experience with law enforcement. *See State*

*v. Jackson*, 186 Ariz. 20, 30–31, 918 P.2d 1038, 1048–49 (1996).

(1) *Intelligence:* at the time of his Rule 11 evaluation, Clabourne was found to be of average intelligence. He completed the eighth grade in regular elementary schools and later grades in juvenile institutions. He received a GED in 1978.

(2) *Maturity:* the evidence was uncontroverted that Clabourne has a tendency to act child-like and impulsively, and that he is more likely to drift into situations than to make plans.

(3) *Participation in murder:* while Langston planned the crime, Clabourne actually killed Webster. He was also highly involved in the kidnapping and the sexual assaults.

(4) *Criminal history:* since his teenage years, Clabourne has spent most of his time in some form of detention for acting out, sometimes due to mental problems, and for committing crimes. At the time of Webster's murder in September 1980, he was living in a federal pre-release halfway house after having served time in juvenile detention for burglarizing homes on a military base. When he was charged with this crime in October 1981, he was in the Pima County jail for burglary and carrying a concealed weapon.

¶ 29 In sum, Clabourne has an average level of intelligence, a criminal history and he was a major participant in the crime. In other cases, these factors have tended to weigh against age as a mitigating circumstance. *See, e.g., State v. Gallegos II*, 185 Ariz. 340, 347, 916 P.2d 1056, 1063 (1996) (extensive and prolonged participation discounts defendant's young age of eighteen years and impulsivity); *State v. Bolton*, 182 Ariz. 290, 314, 896 P.2d 830, 854 (1995) (extensive criminal history and planning undermines claim of age seventeen as mitigating); *State v. Gillies*, 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984) (impact of defendant's age twenty minimized by extent and duration of defendant's participation in murder).

¶ 30 Although close, we defer to the resentencing court's finding that Clabourne's

relatively young age merits some, though very little, mitigating weight.

### b. Nonstatutory Mitigation

#### 1. Mental Impairment

¶ 31 When a defendant's mental capacity is insufficient to support a(G)(1) finding, the court must consider whether it is a nonstatutory mitigating circumstance.

¶ 32 We reject Clabourne's contention that the resentencing court violated *State v. McMurtrey I*, 136 Ariz. 93, 102, 664 P.2d 637, 646 (1983) or *State v. Gallegos*, 178 Ariz. 1, 17–18, 870 P.2d 1097, 1113–14 (1994), by not explicitly stating that it had considered Clabourne's mental capacity evidence for nonstatutory effect after rejecting the statutory claim. A trial court need not explicitly indicate that mental problems carry no nonstatutory weight; the court must only consider the proffered mitigation for nonstatutory effect. *See id.* The resentencing court's finding of the nonstatutory mitigating factor, passive personality/ impulsive/ easily manipulated, discussed next, demonstrates consideration of Clabourne's mental health evidence.

#### 2. Passive Personality/ Impulsive/ Easily Manipulated

¶ 33 We agree with the resentencing court's finding that Clabourne has a passive personality and that he is impulsive and easily manipulated by others. The evidence shows that these traits are rooted to some degree in his mental health problems. As such, we afford some nonstatutory mitigating weight to Clabourne's mental and personality deficiencies. However, Clabourne's active participation throughout the six-hour ordeal and the fact that he personally strangled and stabbed Webster renders negligible any mitigating effect Clabourne's problems and the traits they manifest may have.

#### 3. Dysfunctional Family

¶ 34 Clabourne argues that he never knew his biological father; the family moved frequently because his stepfather was in the military; he was placed in residential treatment at age twelve and has barely lived with his family since; he has had no familial support for many years; and he has established no personal relationships. The State calls Clabourne's claim of a dysfunctional family "frivolous" because his family life has been "idyllic compared to [that of] the vast majority of first-degree murderers in this State." Appellee's Answering Brief/Cross–Appellant's Opening Brief at 37–38.

¶ 35 Whatever the difficulty in Clabourne's family life, he has failed to link his family background to his murderous conduct or to otherwise show how it affected his behavior. *See State v. Spears*, 184 Ariz. 277, 293–94, 908 P.2d 1062, 1078–79 (1996). We agree with the resentencing court that this factor has not been proven.

#### 4. Clabourne as Langston's Victim

¶ 36 Clabourne argues that the uncontroverted evidence that Langston was the mastermind of the crime supports a nonstatutory mitigating circumstance. However, neither the authority he cites nor this case persuade us that this fact is mitigating.

#### 5. Intoxication

¶ 37 There is some indication that Clabourne, Langston and Carrico consumed large quantities of alcohol before and during the crime. But Clabourne failed to raise intoxication as a mitigating circumstance at his resentencing hearing, and we find he has failed to prove intoxication by a preponderance of the evidence. In particular, we find Clabourne's detailed recollection of the events of the evening of Webster's murder, as told to Detective Bustamante more than a year after the murder occurred, belies his claim that he was impaired.

#### 6. Other Factors

¶ 38 Clabourne also claims a handful of factors that are not commonly advanced in the context of mitigation. He observes that A.R.S. § 13–703(G) requires that the sentencing court not be precluded from considering any factor as a mitigating circumstance. *See Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

¶ 39 While a court must consider any proffered evidence, it should not accept it as mitigating unless (1) the defendant has proven the fact or circumstance by a preponderance of the evidence, *see State v. Ramirez,* 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994), and (2) the court has determined that it is in some way mitigating. Mitigating evidence is "any aspect of the defendant's character or record and any circumstance of the offense *relevant* to determining whether a sentence less than death might be appropriate." *State v. Spears,* 184 Ariz. 277, 293, 908 P.2d 1062, 1078 (1996) (quoting *State v. McCall,* 139 Ariz. 147, 162, 677 P.2d 920, 935 (1983)) (emphasis added).

#### a. Economic Cost of Death Penalty

¶ 40 The resentencing court found that Clabourne proved that "the economic cost to the State of Arizona arising from the prosecutor's decision to maintain its request for the death penalty in this case, as compared with the cost of seeking a life sentence, is mitigating." Sp. Verdict at 6. We disagree. Even if Clabourne has proven the circumstance, the economic cost of the death penalty is unrelated to Clabourne, his character or record, or the circumstances of his offense. The cost/benefit analysis of the death penalty is a decision left to the legislature in the first instance, and to the State in any given case. We agree with the State on its cross appeal.

#### b. Arbitrariness of Death Penalty; Prosecutor's Unfettered Discretion; Sentences of Others Involved in This and Other Similar Crimes

¶ 41 Clabourne raises these issues as three separate mitigating factors and as one combined constitutional claim. Because Clabourne makes no argument as to why these factors are mitigating, we reject them as such. As to the constitutional claims, we have rejected these before: 1) arbitrariness of the death penalty, *see State v. Salazar,* 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992), *cert. denied,* 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993); 2) prosecutor's unfettered discretion, *see State v. Atwood,* 171 Ariz. 576, 646, 832 P.2d 593, 663 (1992), *cert.*

*denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); 3) proportionality review, *see Salazar,* 173 Ariz. at 399, 416, 844 P.2d at 583. And we continue to reject these arguments here.

¶ 42 With respect to the sentences of others involved in the crime, we note that only an unexplained disparity between sentences may be a mitigating circumstance. *See State v. Schurz,* 176 Ariz. 46, 57, 859 P.2d 156, 167 (1993). Here the disparity is explained: Carrico was not charged with murder and Langston pled guilty. *See State v. Detrich,* 188 Ariz. 57, 69, 932 P.2d 1328, 1340 (1997) (when disparity results from appropriate plea agreement, disparity not mitigating). Moreover, Clabourne was the killer, and the State was of the view that a plea agreement with Langston was necessary because "the case against Langston was, at best, shaky, while the case against [Clabourne] was overwhelming, with much of the evidence coming from his own mouth." Appellee's Answering Brief/Cross–Appellants Opening Brief at 51.

#### c. Length of Time on Death Row

¶ 43 Clabourne has been sentenced to death for eighteen years. He claims this is mitigating because he has a mental illness and Langston and Carrico, who do not, have not had to face the prospect of execution for the same period. We find these facts altogether unrelated to Clabourne's character or record and the circumstances of his offense and, therefore, reject this proffered mitigation. *Cf. State v. Schackart,* 190 Ariz. 238, 259, 947 P.2d 315, 336 (1997) (holding that the fact that defendant spent years on death row awaiting execution does not render the death penalty cruel and unusual punishment).

#### c. Independent Reweighing

¶ 44 Upon independent review, we find that the mitigating circumstances are insufficiently substantial to warrant leniency.

### B. Other Sentencing Issues

#### 1. Rick Diaz's Post–Hypnotic Testimony

¶ 45 On the night Webster was murdered, she was accompanied to the Green

Dolphin Bar by Rick Diaz. The day before trial, the State notified defense counsel that Diaz had been hypnotized after he had given statements. The State agreed to limit testimony to information contained in Diaz's original, unhypnotized statements. *See State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 210–11, 644 P.2d 1266, 1296–97 (1982) (holding witness who has been hypnotized may testify only to facts demonstrably recalled prior to hypnosis and only where certain prerequisites have been met). Diaz testified at trial that Clabourne did not appear to be intoxicated when Diaz saw him at the bar. Defense counsel did not object to Diaz's testimony.

¶ 46 At resentencing, Clabourne asserted Diaz had not said Clabourne was not intoxicated prior to the hypnosis. The resentencing court summarily denied Clabourne's motion to preclude the Diaz testimony. Clabourne claims this was error and critical to mitigation because Diaz alone testified that Clabourne was not intoxicated.

¶ 47 The resentencing court correctly denied Clabourne's motion. At trial, Clabourne made no objection to the content of Diaz's testimony. And, a sentencing judge can consider all trial evidence. In any event, for the reasons discussed earlier, even without the Diaz testimony we would find that Clabourne has failed to prove intoxication by a preponderance of the evidence.

### 2. Bias of the Resentencing Judge

¶ 48 Clabourne claims that at the time he was resentenced, the judge was charged with sexual harassment and with failure to address sexual harassment charges against judges under his supervision. Clabourne contends the judge accepted this case, which involves the humiliation and sexual assault of a woman, and sentenced Clabourne to death in order to "deflect" the allegations of a sexual nature that were pending against him at the time of the resentencing. Clabourne filed a combined motion to vacate, recuse and for a new sentencing on October 30, 1997—seventy-seven days after his judgment was entered, the sentence imposed, and the appeal filed.

¶ 49 The presiding judge denied the motion as untimely. *See* Ariz. R.Crim. P. 24.2(a) (requiring motions be made "no later than 60 days after the entry of judgment and sentence but before the defendant's appeal, if any, is perfected"). The presiding judge also noted that a motion to recuse requires a supporting affidavit, and Clabourne failed to provide one. *See* Ariz. R.Crim. P. 10.1(b). In the alternative, he found Clabourne failed to provide valid factual support for the claim that the resentencing judge accepted the case to deflect allegations of a sexual nature pending against him. Clabourne filed a motion to clarify that was denied by the presiding judge. Now, on direct appeal, Clabourne argues the facts "minimally" give an appearance of bias and partiality and asks that the case be remanded for resentencing or at least an evidentiary hearing.

¶ 50 The State argues, first, that this court lacks jurisdiction to review the presiding judge's order because Clabourne failed to timely appeal that order to this court. Second, the State contends this court lacks jurisdiction because the presiding judge lacked jurisdiction to entertain a motion filed more than sixty days after entry of judgment and sentence. *See* Ariz. R.Crim. P. 24.2(a).

¶ 51 We need not reach the timeliness and jurisdictional issues because the record amply supports the presiding judge's conclusion that Clabourne's motion was unsupported by evidence. There was no abuse of discretion.

### 3. Victim Impact Statements/Bifurcation of Capital Convictions

¶ 52 Prior to resentencing, the State presented the court with letters from Webster's family. The resentencing court summarily denied Clabourne's motion for preclusion of victim statements or bifurcation of capital and noncapital sentencing. Clabourne claims the denial violated his constitutional rights.

¶ 53 Statements from a victim's family and friends concerning the impact of the crime should be considered to rebut mitigating evidence but are irrelevant to a determination of aggravating circumstances in capital sentencing. *See State v. Mann,* 188

Ariz. 220, 228, 934 P.2d 784, 792 (1997); *State v. Gulbrandson,* 184 Ariz. 46, 66–67, 906 P.2d 579, 599–600 (1995). They may also be considered in connection with noncapital offenses. We do not require sentencing judges to bifurcate capital and noncapital sentencing proceedings. *See id.* Instead we presume, absent indication to the contrary, that the resentencing court considered only evidence relevant to the sentencing at hand. *See id.*

██ ¶ 54 Here, as Clabourne concedes, there is no indication that the resentencing court considered the victim impact statements when determining whether to impose the death penalty. Appellant's Reply Brief/ Cross Appellee's Answering Brief at 37. Therefore, there was no error.

### 4. Methods of Execution

¶ 55 Clabourne argues the methods of execution used in Arizona violate the Eighth Amendment. As we have before, we reject this claim. *See State v. Lee,* 189 Ariz. 590, 607, 944 P.2d 1204, 1221 (1997), *cert. denied,* 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 321 (1998) (lethal gas); *State v. Spreitz,* 190 Ariz. 129, 151, 945 P.2d 1260, 1282 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1315, 140 L.Ed.2d 479 (1998) (lethal injection).

### 5. Sentences for Counts Other Than Murder

██ ¶ 56 Clabourne challenges the resentencing court's imposition of four *consecutive* fourteen-year terms for the noncapital charges (kidnapping and three sexual assault). The first sentencing court ordered these terms to run *concurrently.* The State agrees the noncapital sentences should run concurrently in the event the death penalty is affirmed.

¶ 57 Our review of the record shows that the district court order affirmed by the Ninth Circuit vacated only Clabourne's death sentence. The resentencing court, as well as Clabourne and the State, erroneously proceeded as if the district court had also set aside the sentences for the noncapital convictions. The resentencing court should not have addressed the noncapital sentences.

Thus, we vacate the resentencing court's order for consecutive sentences and reinstate the concurrent noncapital sentences imposed at Clabourne's first sentencing.

¶ 58 Even if the district court had vacated the noncapital sentences so that resentencing as to those convictions was proper, in light of the fact that the death sentence was again imposed, consecutive sentences would have been inappropriate. *See* Ariz. R.Crim. P. 26.14 (Where a sentence has been set aside, "the court may not impose a sentence for the same offense . . . more severe than the prior sentence," with exceptions not relevant here.).

## IV. DISPOSITION

¶ 459 We affirm Clabourne's sentence of death for first-degree murder. We vacate the order that Clabourne's noncapital sentences be served consecutively and reinstate the order that they run concurrently.

CONCURRING: THOMAS A. ZLAKET, Chief Justice CHARLES E. JONES, Vice Chief Justice STANLEY G. FELDMAN, Justice RUTH V. McGREGOR, Justice