**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT D. CLABOURNE,<br>*Petitioner-Appellant*,<br><br>v.<br><br>CHARLES L. RYAN,<br>*Respondent-Appellee*. | No. 09-99022<br><br>D.C. No.<br>4:03-cv-00542-<br>RCC<br><br><br>ORDER |

Filed August 1, 2017

Before: Marsha S. Berzon, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Order;
Concurrence by Judges Clifton and Ikuta;
Dissent by Judge Berzon

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The panel filed an order denying a petition for panel rehearing and, on behalf of the court, a petition for rehearing en banc in an appeal from the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition in a death penalty case.

Concurring in the denial of rehearing, Judges Clifton and Ikuta wrote that the panel's assessment of what the Arizona Supreme Court did in resolving the petitioner's appeal remained correct.

Dissenting from the denial of rehearing, Judge Berzon wrote that, in light of *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc) (holding that the Supreme Court of Arizona applied an unconstitutional causal nexus test for nonstatutory mitigation), the panel was obligated to rehear the case and grant the habeas petition with regard to the penalty phase of trial.

### COUNSEL

S. Jonathan Young, Williamson & Young PC, Tucson, Arizona, for Petitioner-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jeffrey A. Zick (argued), Jacinda A. Lanum, and Amy Pignatella Cain, Assistant Attorneys General; Lacey Stover Gard and Kent Cattani, Capital Litigation Section Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Tucson, Arizona; for Respondent-Appellee.

## ORDER

Judges Clifton and Ikuta have voted to deny the petition for panel rehearing. Judge Berzon has voted to grant the petition for panel rehearing.

Judge Ikuta has voted to deny the petition for rehearing en banc, and Judge Clifton so recommends. Judge Berzon has voted to grant the petition for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are therefore **DENIED**.

CLIFTON and IKUTA, Circuit Judges, concurring in the denial of rehearing:

After careful consideration of this case, including a close review of the decision of the Arizona Supreme Court, *State v. Clabourne*, 194 Ariz. 379, 983 P.2d 748 (1999) (en banc), we entered a unanimous opinion that concluded that the

Arizona court "gave Clabourne's mental illness some nonstatutory mitigating weight but ultimately held that the mitigating circumstances were insufficient to warrant leniency." *Clabourne v. Ryan*, 745 F.3d 362, 369–70 (9th Cir. 2014). After explaining the basis for our determination that the Arizona Supreme Court had given mitigating weight to Clabourne's mental deficiencies, we concluded, at 373:

> We cannot construe the court to have violated *Eddings* [*v. Oklahoma*, 455 U.S. 104 (1982)] by giving Clabourne's mental health issues "no weight by excluding such evidence from their consideration." *Eddings*, [at 115]. The Arizona Supreme Court's decision under review was not contrary to federal law, because it considered Clabourne's mental health condition as mitigating evidence. *Eddings* requires no more.

Although there have been developments in our court's precedents since we filed our opinion, none alter our assessment of what the Arizona Supreme Court did in resolving Clabourne's appeal. We do not doubt the sincerity of Judge Berzon's current view, but we conclude that our previous analysis of that court's action, which she joined, remains correct.

---

BERZON, Circuit Judge, dissenting from the denial of rehearing:

I dissent from the denial of rehearing in this case.

We held the rehearing petition in this case for *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), *cert. denied*, 137 S. Ct. 39 (2016), an en banc opinion of this court issued after our panel opinion, and then ordered supplemental briefing about the impact of *McKinney*. *See* Order to File Supplemental Briefs, *Clabourne v. Ryan*, 745 F.3d 362, 371 (9th Cir. 2014) (No. 09-99022).  Ignoring both that briefing and *McKinney* itself, the panel majority now refuses to rehear the case.  I am convinced that we are obligated to do so and, in light of *McKinney*, to grant the petition for habeas corpus with regard to the penalty phase. *See, e.g.*, *Hedlund v. Ryan*, 815 F.3d 1233, 1236 (9th Cir. 2016), *amended and superseded on denial of rehearing en banc*, 854 F.3d 557 (9th Cir. 2017) (withdrawing original panel opinion and reconsidering a petitioner's claim in light of the intervening decision in *McKinney*).

## I.

In *McKinney*, an en banc panel of this court stated unequivocally that, from the late 1980s to 2006, the "Supreme Court of Arizona articulated and applied a 'causal nexus' test for nonstatutory mitigation that forbade as a matter of law giving weight to mitigating evidence, such as family background or mental condition, unless the background or mental condition was causally connected to the crime." 813 F.3d at 802.  That causal nexus test, we held, violated *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982), which bars a sentencing court in a capital case from refusing as a matter of law to consider any relevant mitigating evidence. *McKinney*, 813 F.3d at 802.

*McKinney* emphasized repeatedly the consistency with which the Arizona Supreme Court articulated and applied the

unconstitutional causal nexus rule during the relevant period. *Id.* at 824 ("[T]he Arizona Supreme Court, during a period of just over fifteen years, consistently insisted upon and applied its causal nexus test to nonstatutory mitigation. In no case during this period did the court give any indication that the causal nexus test was not the law in Arizona, or any indication that it had the slightest doubt about the constitutionality of the test."); *see also id.* at 803, 815, 826. It was in 1999 that the Arizona Supreme Court affirmed Clabourne's death sentence, which, like the timing of the decision in *McKinney*, was "roughly in the middle of the fifteen-year-plus period during which it insisted on its unconstitutional nexus test for nonstatutory mitigation." *See id.* at 820.

Of course, *McKinney* does not dispose of Clabourne's petition for rehearing outright. But *McKinney*'s holding that the Arizona Supreme Court consistently applied an unconstitutional rule at the time it reviewed Clabourne's sentence provides the baseline from which we must review the decision in *State v. Clabourne*, 194 Ariz. 379 (1999) (en banc) ("*Az Clabourne*"), and interpret any ambiguity therein.

Critically, *McKinney* also overruled the requirement established in *Schad v. Ryan*, 671 F.3d 708, 724 (9th Cir. 2011), that a federal habeas court may grant a petitioner relief on an *Eddings* claim only if there is a "clear indication in the record" that a state court refused as a matter of law to consider relevant nonstatutory mitigation evidence. *McKinney*, 813 F.3d at 819. *McKinney* held instead that a federal habeas court examining a claimed *Eddings* error need give a state court decision only the normal deference required under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* In adhering to *Schad*'s "clear

indication" test, *see Clabourne v. Ryan*, 745 F.3d 362, 371, 373 (9th Cir. 2014), the panel opinion thus depends upon a standard that an en banc panel of this court expressly rejected as "an inappropriate and unnecessary gloss on the deference already required under" AEDPA, *see McKinney*, 813 F.3d at 819.

In short, by denying Clabourne's petition for rehearing and leaving the opinion in this case unamended, the panel majority does not grapple with the significance of the intervening decision in *McKinney*, with regard either to its holding that the Arizona Supreme Court consistently applied an unconstitutional causal nexus rule during the relevant period or to its rejection of *Schad*'s heightened standard of review. At a minimum then—whatever the proper outcome—the panel opinion's reasoning as it stands is inconsistent with the current law of this circuit and should be reconsidered.

But, the problem is not, in my view, one that can be simply papered over by revisions to the existing panel opinion. Rather, if the reliance on *Schad* is eliminated, as it must be, and *McKinney* is properly applied, we must change the outcome of this case by granting the petition for habeas corpus with regard to the penalty phase.

II.

In light of *McKinney*'s review of Arizona case law during the period *Az Clabourne* was decided, and absent the *Schad* mandate that we find a "clear indication in the record" that the state court committed *Eddings* error, I am convinced that *Az Clabourne* applied the unconstitutional causal nexus test identified in *McKinney* by declining to consider evidence of

Clabourne's schizophrenia as a nonstatutory mitigating factor.

The Arizona Supreme Court initially addressed Clabourne's mental health conditions in the context of statutory mitigation under Arizona Revised Statutes § 13-703(G)(1), impaired capacity. *Az Clabourne*, 194 Ariz. at 385. Statutory mitigation based on impaired capacity is available in Arizona only when mental illness is a "*major contributing cause*" of the defendant's conduct *and* the substantive requirements of (G)(1) are met. *Id.* (emphasis in original) (citation omitted). Substantively, "[t]he statute calls for 'significant' impairment of one of two specific abilities: (1) the capacity to appreciate the wrongfulness of conduct or (2) the capacity to conform conduct to the requirements of the law." *Id.*; *see* Ariz. Rev. Stat. § 13-703(G)(1) (current version at Ariz. Rev. Stat. § 13-751(G)(1)).

In considering whether Clabourne was entitled to statutory mitigation for impaired capacity, the Arizona Supreme Court first recounted the evidence related to Clabourne's mental health. Two mental health experts believed Clabourne suffered from mental illness, probably schizophrenia, and another believed he had a personality disorder. *Az Clabourne*, 194 Ariz. at 385. Nevertheless, these experts agreed "that there was no evidence of Clabourne's state of mind at the particular time of the offense." *Id.* In particular, the experts "could [not] say whether [Clabourne] was 'psychotic,'" and none had "stated or implied a causal relationship between Clabourne's mental health and the murder." *Id.* "Neither did any nonexpert party, including Clabourne, indicate that Clabourne had lost contact with reality or acted abnormally when he participated in the crime." *Id.*

After emphasizing the requirement that mental illness be a "*major contributing cause*" of the defendant's conduct for a finding of impaired capacity under the statute, the court held Clabourne's "status of being mentally ill alone [] insufficient to support a (G)(1) finding." *Id.* (emphasis in original).

The Arizona Supreme Court then proceeded to consider, still in the context of statutory mitigation, Clabourne's argument that "his mental illness causes a passivity and paranoia that allowed Langston to control him, and therefore he was unable to resist Langston's pressure to rape and kill Webster." *Id.* at 386. The court had earlier in its discussion of impaired capacity noted that "[t]he record does demonstrate that Langston was a manipulative and frightening man who, for the most part, choreographed the crime and urged Clabourne to kill Webster." *Id.* at 385. Accordingly, whereas the court rejected Clabourne's status of being mentally ill because there was no causal link, the court rejected Clabourne's passive personality and paranoia as a basis for mitigation under subsection (G)(1) because Clabourne had not satisfied the statute's *substantive* standard. That is, Clabourne had not demonstrated "that his capacity to conform his conduct to the requirements of the law was significantly impaired" because he had shown neither that "he was passive or paranoid to any degree of impairment [n]or that he had actually lost any control over his conduct when he committed the murder." *Id.* at 386; *see* Ariz. Rev. Stat. § 13-703(G)(1) (current version at Ariz. Rev. Stat. § 13-751(G)(1)).

When the Arizona Supreme Court turned to Clabourne's mental health in the context of *nonstatutory* mitigating circumstances, it addressed only the specific fact that

"Clabourne has a passive personality and that he is impulsive and easily manipulated by others." *Id.* at 387. As the court had indicated earlier, there was a plausible causal connection between *these* personality traits and the crime, given Langston's manipulative personality and his leadership role in Webster's murder. *See id.* at 385. So, under the Arizona Supreme Court's causal nexus standard, those traits required weighing as to nonstatutory mitigation. The court recognized Clabourne's passive personality and related characteristics to be "rooted to some degree in his mental health problems," *id.* at 387, but, as I have explained, it considered those problems distinct from his schizophrenia diagnosis. It was thus only as to the specific "mental and personality deficiencies" of passive personality, impulsiveness, and manipulability—which *did* have a connection to the crime—that the court "afford[ed] some nonstatutory mitigating weight." *Id.*

That the court gave some nonstatutory mitigating weight only to *these* specific mental and personality deficiencies, and *not* to his schizophrenia, is further evidenced by the court's justification (in the very next sentence) for ultimately granting those characteristics little mitigating weight. *See id.* The court highlighted Clabourne's "active participation throughout the six-hour ordeal and the fact that he personally strangled and stabbed Webster," holding that those facts "render[ed] negligible any mitigating effect [of] Clabourne's problems and the traits they manifest." *Id.* Clabourne's active involvement in a lengthy crime was pertinent to weighing the evidence that Clabourne had a passive, impulsive, and manipulable personality, but that active involvement would have no bearing on what mitigating weight to give a schizophrenia diagnosis.

To hold that the Arizona Supreme Court refused to consider Clabourne's schizophrenia at the nonstatutory mitigation phase thus does not, as the panel opinion suggests, require reaching the "illogical [] conclu[sion] that the Arizona Supreme Court considered [Clabourne's schizophrenia] diagnosis and explicitly referenced it in one portion of its opinion but forgot it when considering nonstatutory mitigation, discussed just a few pages later in the opinion." *Clabourne*, 745 F.3d at 374. The better inference, in light of *McKinney* and based on the reasoning and structure of *Az Clabourne*, is that the Arizona Supreme Court applied its causal nexus test—which, *McKinney* held, was its governing standard at the time, consistently applied—to exclude Clabourne's schizophrenia from consideration as a nonstatutory mitigating factor.

This understanding is bolstered by the fact that the Arizona Supreme Court expressly applied the causal nexus standard in the very next subsection of the nonstatutory mitigation discussion. The court rejected Clabourne's evidence of his dysfunctional family background because "[w]hatever the difficulty in Clabourne's family life, he has failed to link his family background to his murderous conduct or to otherwise show how it affected his behavior." *Az Clabourne*, 194 Ariz. at 387 (citing *State v. Spears*, 184 Ariz. 277, 293–94 (1996)).

The conclusion that the Arizona Supreme Court applied the unconstitutional causal nexus test to preclude consideration of Clabourne's schizophrenia diagnosis as a nonstatutory mitigating factor is further supported by the Arizona Supreme Court's citation to its own decision in *Az Clabourne* in later cases when applying the causal nexus standard. *See, e.g.*, *State v. Carlson*, 202 Ariz. 570, 586

(2002) (en banc); *State v. Cañez*, 202 Ariz. 133, 164 (2002) (en banc).  Those later citations to *Az Clabourne* for the causal nexus standard are relevant in light of *McKinney*.  To the extent *Towery v. Ryan*, 673 F.3d 933, 946 (9th Cir. 2012), limited our review in habeas cases to the record in the case before us, barring consideration of post-hoc characterizations of a decision by a state court, *Towery* is inconsistent with *McKinney* and so does not control.  *McKinney* looked freely beyond the record of the case before it, examining Arizona Supreme Court decisions in numerous other cases to establish that court's pattern of applying an unconstitutional rule.[1]  Of course, later Arizona Supreme Court citations to *Az Clabourne* for the causal nexus standard are not dispositive, as a federal habeas court may grant relief only based on an error in the decision adjudicating a petitioner's claim.  *See* 28 U.S.C. § 2254(d).  But those later decisions do corroborate what a careful reading of the opinion, in light of *McKinney*, demonstrates.[2]

Again, that *Az Clabourne* applied the unconstitutional nexus test disapproved in *McKinney* is no wonder.  As *McKinney* held, the Arizona courts applied the unconstitutional nexus test *consistently* during the period it decided *Az Clabourne*.  "A good court [] does not apply an established rule erratically, enforcing it arbitrarily in some cases but not in others.  We have great respect for the

---

[1] *McKinney* also held *Towery* was wrongly decided as to the *Eddings* issue in that case, further undermining *Towery*'s persuasive value.  *See McKinney*, 813 F.3d at 824.

[2] Similarly, the prosecutor's arguments at Clabourne's resentencing hearing regarding a causal nexus confirm that Arizona law required such a nexus at the time Clabourne was resentenced, as *McKinney* held.

Supreme Court of Arizona, whose institutional integrity is demonstrated, *inter alia*, by the consistent application of the causal nexus test during the fifteen-year period it was in effect." *McKinney*, 813 F.3d at 826. To hold, as does the current panel opinion, that the Arizona Supreme Court for some unexplained reason did not apply its own prior precedents in this case alone is to disregard not only *McKinnney* but the Arizona Supreme Court's own later references to this case as one in which the nexus requirement *was* applied.

In sum, after *McKinney*, I see no choice but to grant Clabourne's petition and remand this case for resentencing. There is just no principled way to reconcile the panel opinion's reasoning and holding with this court's en banc opinion. I would rehear this case and grant the petition for habeas corpus with regard to the penalty phase. I therefore strongly dissent from the panel's refusal to do either.