
**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT CHARLES TOWERY, | No. 12-15071 |
| Petitioner - Appellant, | D.C. No. 2:03-cv-00826-ROS |
| v. | |
| CHARLES RYAN; CHARLES GOLDSMITH, Warden, Arizona State Prison Central Comples-Florence; TERRY L. GODDARD, Arizona State Attorney General; DORA B. SCHRIRO, Director of the Arizona Department of Corrections, | OPINION |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Chief District Judge, Presiding

Argued and Submitted February 27, 2012
Phoenix, Arizona

Filed

Before: Mary M. Schroeder, Raymond C. Fisher and N. Randy Smith, Circuit Judges.

PER CURIAM:

Robert Towery was convicted of murder and sentenced to death in 1992. After pursuing direct review and seeking postconviction relief in state court, he filed a pro se habeas petition in federal district court. The district court appointed counsel, who filed an amended federal habeas petition raising eight substantive claims of constitutional error as well as numerous distinct allegations of counsel ineffectiveness. Counsel did not, however, include Towery's fully exhausted *Eddings-Tennard* claim in the amended petition. *See Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Tennard v. Dretke*, 542 U.S. 274 (2004). The district court denied the petition, and we affirmed. *See Towery v. Schriro* (*Towery II*), 641 F.3d 300 (9th Cir. 2010), *cert. denied*, 132 S. Ct. 159 (2011).

Towery subsequently filed a motion for relief from judgment seeking the opportunity to litigate the *Eddings-Tennard* issue as a new claim. He argued that he should be permitted to pursue that claim, notwithstanding the statutory bar on second or successive habeas petitions, because his counsel had abandoned him by failing to present the claim in his amended petition. He proposed a new rule under which abandonment by counsel would serve as an equitable exception to the bar on second or successive petitions. The district court denied the motion.

We affirm. We need not decide whether abandonment by counsel can serve as an exception to the bar on second or successive petitions because, like the

2

district court, we conclude that Towery was not abandoned. Counsel did not engage in "egregious" professional misconduct, *Holland v. Florida*, 130 S. Ct. 2549, 2563-64 (2010), or leave Towery "without any functioning attorney of record," *Maples v. Thomas*, 132 S. Ct. 912, 927 (2012). Accordingly, we need not decide whether Towery's attorney was negligent in failing to raise a colorable *Eddings-Tennard* claim. We hold that the district court did not abuse its discretion by denying Towery's motion.

## I. BACKGROUND

Towery was convicted of first-degree murder, armed robbery, first-degree burglary, kidnapping, theft and attempted theft in 1992. *See Towery II*, 641 F.3d at 303. He was sentenced to death. *See id.* His execution is scheduled to take place on March 8, 2012.

### A. Sentencing Court

At sentencing, Towery presented evidence, through the testimony of his sisters, that his mother was physically and emotionally abusive when he was a child. The sentencing court concluded that Towery's difficult childhood was not a mitigating circumstance because Towery could not show that it had an effect on his behavior that was beyond his control or rose to the level of a mental impairment:

3

I have heard and considered the evidence concerning the defendant's family background, the manner in which Mr. Towery was raised by his mother. And certainly no one would wish such a condition upon anyone. However, a difficult family background, in and of itself, is not a mitigating circumstance. If it were, nearly every defendant could point to some circumstance in his or her background that would call for some mitigation.

A difficult family background is a relevant mitigating circumstance, if a defendant can show that something in that background had an [e]ffect or impact on his behavior that was beyond the defendant's control. I do not believe there was anything in this case that was beyond the defendant's control.

Although he might not have received the interplay and nurturing that he would have liked to have had and needed from his mother, I have to look at his two siblings, who evidence nothing concerning drug use, and have managed to grow up being relatively stable people in the community, and contributing members of society.

Therefore, the fact that the defendant had a dysfunctional relationship with his mother, and being subject to emotional abuse, is not a mitigating circumstance, because it amounts to a mere character or personal – personality disorder, and does not rise to the level of a mental impairment.

The sentencing court then weighed the mitigating circumstances that it found to exist against the aggravating circumstances and imposed a death sentence:

The mitigating circumstances that I have found to exist that merit weight and consideration are the impairment of the defendant's capacity to conform his conduct to the law due to drug use, which I have given little weight, and the sentence given to his co-defendant, to which I have given great weight.

4

I have also considered the defendant's family background, the manner in which he was raised. I have considered Mr. Towery's character, propensities, record, and circumstances of the offense which would constitute mitigation.

I have considered whether or not this case presents circumstances that are so shocking or repugnant, that the murder stands out above the norm of first degree murder, and whether the background of the defendant sets him apart from the usual murderer.

In considering the existence of the three aggravating circumstances, and balancing them against the mitigating circumstances, I find the mitigating circumstances which do exist are not significantly substantial to call for leniency.

It is unclear from the transcript whether the sentencing court ultimately considered Towery's difficult childhood in imposing sentence. On the one hand, the court expressly found that Towery's childhood was not a mitigating circumstance, and, consistent with that determination, the court did not mention Towery's childhood when it listed the mitigating circumstances it found to exist. On the other hand, the court said that it "also considered the defendant's family background, the manner in which he was raised" and considered "whether the background of the defendant set[] him apart from the usual murderer," suggesting that the court may have included this evidence in the sentencing calculus after all.

## B. Arizona Supreme Court

On direct appeal, Towery argued that the sentencing court violated *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), when it "determined that the defendant had to show that his background had an [e]ffect or impact on his behavior, and since he did not, rejected that evidence as a mitigating factor." He argued that the sentencing court violated *Eddings*' fundamental principle that "there need not be a nexus between mitigating evidence such as child abuse with the offense."

The Arizona Supreme Court rejected Towery's argument. *See State v. Towery* (*Towery I*), 920 P.2d 290, 310-11 (Ariz. 1996). The court concluded that the sentencing court had properly considered the absence of a causal nexus between Towery's difficult childhood and the crime only as a means of weighing the evidence, not as a means of discounting it as a matter of law:

> We independently weigh the mitigating evidence against the aggravating circumstances to determine whether leniency is called for. . . .
> The trial judge considered evidence of Defendant's abusive family background and did not find mitigating value in it. Citing a line of Supreme Court cases requiring courts to consider family history for independent mitigating weight, Defendant calls the judge's finding unconstitutional. Although the judge rejected the evidence as a mitigating factor because he failed to establish a nexus

6

between his family background and his crime, Defendant argues that the judge violated the law.

Defendant misconstrues the Supreme Court cases culminating in *Penry v. Lynaugh*, 492 U.S. 302 (1989). They hold only that "a sentencer may not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence offered by the defendant as a basis for a sentence less than death." *Id.* at 318. Having considered family background during the penalty phase, the sentencer must give the evidence such weight that the sentence reflects a "reasoned moral response" to the evidence. *Id.* at 319. The sentencer therefore must consider the defendant's upbringing if proffered but is not required to give it significant mitigating weight. How much weight should be given proffered mitigating factors is a matter within the sound discretion of the sentencing judge.

We have held that a difficult family background is not always entitled to great weight as a mitigating circumstance. *State v. Wallace*, 160 Ariz. 424, 426-27, 773 P.2d 983, 985-86 (1989) ("A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control."), *cert. denied*, 494 U.S. 1047 (1990). We have since reaffirmed that family background may be a substantial mitigating circumstance when it is shown to have some connection with the defendant's offense-related conduct.

Defendant has failed to connect his family background to his criminal conduct. Defendant's sisters testified at the sentencing hearing that he was a small child with dyslexia and a bed-wetting problem and that he was physically and mentally abused by his overweight and diabetic mother. One sister related that his mother forced him to kneel in a box of rice when he complained that his leg hurt after falling from a wagon, and that she gagged him with a sock and bound his hands in the back of the car

7

while on a family trip. These events, however, occurred when Defendant was young, years before he robbed and murdered at the age of 27. They do not prove a loss of impulse control or explain what caused him to kill. The trial judge considered this background and gave it little or no mitigating value. We do not disagree. . . .

We have examined the record for mitigating circumstances and find the rather sparse evidence insufficient to overcome the weight of the aggravating circumstances. We therefore affirm the death sentence.

*Towery I*, 920 P.2d at 310-11 (footnotes and some citations omitted).

## C.    Federal Habeas Proceedings

Following Towery's unsuccessful appeal to the Arizona Supreme Court, Daniel Maynard was appointed to represent Towery in state postconviction relief proceedings. In 2003, following the denial of state postconviction relief, the federal district court appointed Maynard to represent Towery in his federal habeas proceedings. The appointment order provided for the filing of an amended federal habeas petition, and said that "[t]he Amended Petition shall include and set forth all known claims of constitutional error or deprivation entitling Petitioner to federal habeas relief," citing Rule 2(c) of the Rules Governing § 2254 Cases, 28 foll. U.S.C. § 2254. Maynard filed an amended petition raising eight claims and numerous sub-claims, but not Towery's *Eddings-Tennard* claim. The district court

8

denied the petition, and we affirmed. *See Towery II*, 641 F.3d 300 (9th Cir. 2010), *cert. denied*, 132 S. Ct. 159 (2011).

**D.  Rule 60(b)(6) Motion**

Towery subsequently filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6), asking the district court reopen his habeas case and adjudicate his *Eddings-Tennard* claim on the merits.  Towery argued that there were grounds to raise this new claim in a Rule 60 motion, because Maynard had abandoned him by failing to raise the claim earlier.  He argued that abandonment was a proper basis for relief under Rule 60(b)(6), *see Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168-71 (9th Cir. 2002), as well as a persuasive reason to avoid the statutory bar on second or successive habeas petitions.

The district court denied the motion, citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005), for the proposition that "Rule 60(b) may not be used to avoid the prohibition against second or successive petitions set forth in 28 U.S.C. § 2244(b)."  Order Den. Mot. Relief J., Jan. 9, 2012, at 2; *see Gonzalez*, 545 U.S. at 531 ("Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction – even claims couched in the language of a true Rule 60(b) motion – circumvents AEDPA's requirement that a new claim be dismissed unless

9

it relies on either a new rule of constitutional law or newly discovered facts.")[1]

According to the district court, *Gonzalez* barred Towery's claim:

> In *Gonzalez*, the Court explained that an appropriate Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." The Court specifically noted that "an attack based on the movant's own conduct, *or his habeas counsel's omissions* . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." . . .
>
> Here, Petitioner is seeking relief from the judgment denying his habeas petition based on habeas counsel's omissions. Therefore, under *Gonzale[z]*, Petitioner's Rule 60(b) motion is the equivalent of a successive petition, which this Court cannot entertain absent authorization from the Ninth Circuit Court of Appeals. *See* 28 U.S.C. § 2244(b)(3).

Order Den. Mot. Relief J., Jan. 9, 2012, at 3-4 (first alteration in original) (some citations omitted) (quoting *Gonzalez*, 545 U.S. at 532 & n.5).

The district court added that, even assuming abandonment by habeas counsel could undermine the integrity of habeas proceedings such that Towery's Rule 60(b) motion would not constitute a second or successive petition, Maynard's conduct did not constitute abandonment:

---

[1] AEDPA refers to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

In a case decided prior to the ruling in *Gonzalez*, the Second Circuit denied the petitioner's request for relief under Rule 60(b) based on habeas counsel's performance. *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004). The court held that counsel's failure to raise certain claims – a failure which counsel himself was willing to swear constituted ineffective assistance – did not undermine the integrity of the proceedings because counsel's performance did not reach a level of deficiency that could be deemed "abandonment" of the petitioner's case. *Id.* at 81-82. The court then explained that to prove abandonment, "a Rule 60(b)(6) movant must show that his lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and consequently deprived the petitioner of any opportunity to be heard at all." *Id.* at 81.

Petitioner has not demonstrated that habeas counsel's performance descended to a level where Petitioner was abandoned and deprived of an opportunity to be heard. Despite failing to raise a *Tennard* claim, Maynard presented eight substantive claims of constitutional error as well as numerous distinct allegations of counsel ineffectiveness. He also pursued an innocence theory based on previously untested crime scene evidence. The failure to raise a claim, even a viable one, does not amount to abandonment. On this record, the Court finds that Maynard's failure to present the *Tennard* claim did not constitute abandonment or deprive Petitioner of any opportunity to be heard concerning the constitutionality of his conviction and sentence.

Order Den. Mot. Relief J., Jan. 9, 2012, at 4-5.

The district court denied Towery's motion, and Towery timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

11

We have jurisdiction under 28 U.S.C. § 1291. "We review the district court's denial of a Rule 60(b)(6) motion for an abuse of discretion." *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007); *see also Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam) ("60(b) motions are addressed to the sound discretion of the district court."). A court abuses its discretion when it fails to identify and apply the correct legal rule to the relief requested, or if its application of the correct legal standard was illogical, implausible or without support in inferences that may be drawn from the facts in the record. *See United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc). In addition, relief under Rule 60(b)(6) requires the moving party to make a showing of "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535. "Such circumstances will rarely occur in the habeas context," and "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Id.*

## III. DISCUSSION

Towery argues that there were extraordinary circumstances here because the statutory bar on second or successive habeas petitions, 28 U.S.C. § 2244(b), should be read to include an equitable exception for attorney abandonment. He relies on two cases construing abandonment as a basis for relief from two other procedural bars governing federal habeas proceedings – *Holland v. Florida*, 130 S. Ct. 2549,

12

2563-64 (2010), holding that habeas counsel's professional misconduct, including abandonment, can "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling," and *Maples v. Thomas*, 132 S. Ct. 912, 922-27 (2012), holding that attorney abandonment can constitute "cause" for excusing a procedural default. He contends that a similar exception should be read into the second-or-successive-petition bar and that Maynard abandoned him by failing to present his fully exhausted *Eddings-Tennard* claim in his amended federal habeas petition. According to Towery, Maynard "breached the duty of loyalty and thereby voided the agency relationship, thereby causing the abandonment that Mr. Towery contends should allow him to raise the *Tennard* issue in a motion under Rule 60(b)(6) unfettered by the second-or-successive-

petition bar." He says that "failing to raise a plainly meritorious ground for avoiding the death sentence" was inconsistent with the duty of loyalty.[2]

## A.    Abandonment

We need not decide whether there is an attorney abandonment exception to the statutory bar on second or successive petitions, because we conclude that Towery was not abandoned by counsel in this case.

A federal habeas petitioner – who as such does not have a Sixth Amendment right to counsel – is ordinarily bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991) ("Attorney ignorance or inadvertence is not 'cause' [for excusing procedural default] because the attorney is the petitioner's agent when acting, or

---

[2] Before AEDPA imposed the statutory bar, a petitioner's ability to file a second or successive petition was governed by the abuse of the writ doctrine, under which a court could consider a second or subsequent habeas application when the petitioner showed cause and prejudice or a fundamental miscarriage of justice. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). The parties disagree over whether the cause and prejudice standard survives AEDPA. *Compare United States v. Lopez*, 577 F.3d 1053, 1063 n.8 (9th Cir. 2009) (holding that "the meaning of 'second or successive' is informed by the abuse-of-the-writ doctrine" (citing *Panetti v. Quarterman*, 551 U.S. 930 (2007))), *with United States v. Roberson*, 194 F.3d 408, 411 (3d Cir. 1999) ("AEDPA, however, replaced the abuse-of-the writ doctrine articulated in *McCleskey*."), *and Burris v. Parke*, 95 F.3d 465, 469 (7th Cir. 1996) (en banc) ("The doctrine of abuse of the writ is defunct.").

14

failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986))); *see also Maples,* 132 S. Ct. at 922 ("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." (quoting *Coleman*, 501 U.S. at 753-54)); *cf. Holland*, 130 S. Ct. at 2564 (holding that "a 'garden variety claim' of attorney negligence" "does not warrant equitable tolling" of the one-year statute of limitations governing federal habeas petitions (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))); *Gonzalez*, 545 U.S. at 532 n.5 (observing that a habeas petitioner's Rule 60 motion "based on the movant's own conduct, or his habeas counsel's omissions, . . . ordinarily does not go to the integrity of the proceedings," and thus is subject to the bar on second or successive habeas petitions).

An attorney who "abandons his client without notice," however, "sever[s] the principal-agent relationship" and "no longer acts, or fails to act, as the client's representative." *Maples*, 132 S. Ct. at 922-23. "His acts or omissions therefore 'cannot fairly be attributed to [the client].'" *Id.* at 923 (alteration in original) (quoting *Coleman*, 501 U.S. at 753).

15

Towery relies on these principles here. He points out, correctly, that Maynard owed him a duty of loyalty. *See Webb v. Gittlen*, 174 P.3d 275, 279 (Ariz. 2008) ("Attorneys are fiduciaries with duties of loyalty, care, and obedience, whose relationship with the client must be one of 'utmost trust.'" (quoting *In re Piatt*, 951 P.2d 889, 891 (Ariz. 1997))); *In re Estate of Shano*, 869 P.2d 1203, 1210 (Ariz. Ct. App. 1993) ("A lawyer's overriding duty of loyalty to a client is a basic tenet of the attorney-client relationship. Inherent in this principle is the concept that no other interest or consideration should be permitted to interfere with the lawyer's loyalty to his client."); Arizona Rules of Professional Conduct R. 1.7; Restatement (Third) of Law Governing Lawyers § 16 (2000).

Towery is also correct that, under general agency principles, breach of the duty of loyalty can terminate an agency relationship. *See State v. DiGiulio*, 835 P.2d 488, 492 (Ariz. Ct. App. 1992) ("Violating the duty of loyalty, or failing to disclose adverse interests, voids the agency relationship."); Restatement (Second) of Agency § 112 (1958) ("Unless otherwise agreed, the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.").

Towery, however, has not shown severance of his attorney-client relationship with Maynard. First, Towery has not shown that Maynard committed

16

a "serious breach of loyalty." Towery does not argue, and the record does not suggest, that Maynard permitted any interest or consideration to interfere with his loyalty to Towery. Towery also has presented no authority for the proposition that counsel's failure to raise a colorable habeas claim amounts to a serious breach of the duty of loyalty that severs the attorney-client agency relationship. We are not aware of any such authority.

Second, Towery also has not shown abandonment. "Withdrawal, whether proper or improper, terminates the lawyer's authority to act for the client," and "[t]he client is not bound by acts of a lawyer who refuses to represent the client." Restatement (Third) of Law Governing Lawyers § 31 cmt. f (2000) (citing Restatement (Second) of Agency § 118 (1958) ("Authority terminates if the principal or the agent manifests to the other dissent to its continuance.")); *see also* *Maples*, 132 S. Ct. at 922-23. Here, however, Maynard did not refuse to represent Towery or renounce the attorney-client relationship. On the contrary, he diligently pursued habeas relief on Towery's behalf, although omitting a colorable constitutional claim from Towery's amended petition.

Towery's attempts to compare his case to *Holland* and *Maples* are therefore unpersuasive. The issue in *Holland* was whether the petitioner was entitled to equitable tolling. A petitioner is entitled to equitable tolling only "if he shows '(1)

17

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Court held that, although garden variety attorney negligence is not an extraordinary circumstance, "professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Id.* at 2563.

The Court then found the extraordinary circumstance requirement was likely satisfied in the case before it. Counsel's failure to file the petitioner's petition on time and ignorance of the filing deadline "suggest[ed] simple negligence." *Id.* at 2564. But counsel's failures went much further, violating "fundamental canons of professional responsibility" requiring attorneys to "perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Id.* Counsel's failures also caused the petitioner to lose "what was likely his single opportunity for federal habeas review of the lawfulness of his imprisonment and of his death sentence." *Id.* at 2565. On that record, the Court concluded that counsel's failures were likely sufficient to establish the extraordinary circumstance prong of equitable tolling. *See id.* at 2564-65; *see also*

18

*id.* at 2568 (Alito, J., concurring) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word.").

In *Maples*, the issue was whether counsel's abandonment could serve as cause for lifting the bar on procedural default. *See Maples*, 132 S. Ct. at 922. Cause exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the state's procedural rule. *See id.* Negligence on the part of a petitioner's postconviction attorney does not qualify as cause, because the attorney is the petitioner's agent, and the principal bears the risk of negligent conduct on the part of his agent. *See id.* When an attorney abandons his client without notice, however, the principal-agent relationship is severed, and the attorney's acts or omissions can no longer be fairly be attributed to the client. *See id.* at 922-23.

In *Maples*, the standard for abandonment was satisfied. The petitioner's pro bono counsel, two Sullivan & Cromwell attorneys, left Sullivan & Cromwell's employ months before the state procedural default occurred, and no other lawyer – local counsel or other Sullivan & Cromwell attorneys – was serving as the petitioner's agent in any meaningful sense of the word. *See id.* at 924-27. As a

19

result, the petitioner was "left without any functioning attorney of record." *Id.* at 927.

Towery's case does not compare to *Holland* and *Maples*. At most, Towery alleges that Maynard was negligent in failing to raise a colorable *Eddings-Tennard* claim in Towery's amended federal habeas petition. In contrast to *Holland*, however, Towery makes no claim that Maynard performed incompetent legal work, failed to communicate with him, refused to implement his reasonable requests or failed to keep him informed of key developments in his case. Nor, in contrast to *Maples*, did Maynard cease serving as Towery's agent in any meaningful sense of that word or leave Towery without any functioning attorney of record. Towery's claim of abandonment is therefore unpersuasive.

Furthermore, as the district court noted, Maynard presented eight substantive claims of constitutional error as well as numerous distinct allegations of counsel ineffectiveness. He also pursued an innocence theory based on previously untested crime scene evidence. Order Den. Mot. Relief J., Jan. 9, 2012, at 4-5. Consequently, the court found that "[o]n this record, . . . Maynard's failure to present the *Tennard* claim did not constitute abandonment or deprive Petitioner of any opportunity to be heard concerning the constitutionality of his conviction." *Id.* at 5. Even if the district court's finding regarding abandonment was incorrect, it

20

was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

**B.    Strength of the *Eddings* Claim**

Our conclusion is reinforced when we consider Towery's *Eddings-Tennard* claim applying AEDPA's governing standards.

Towery's federal habeas petition is governed by AEDPA. *See Towery II*, 641 F.3d at 306. Under AEDPA, an application for a writ of habeas corpus may not be granted unless the last reasoned state court decision adjudicating the claim on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Towery relies exclusively on the first of these prongs, arguing that the decisions of the Arizona courts were "contrary to" Supreme Court precedent in *Lockett*, *Eddings* and *Penry*. A state court decision is "contrary to" federal law if the court either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or arrives at a different result on facts that are "materially indistinguishable from a relevant Supreme Court precedent." *Williams v. Taylor*, 529 U.S. 362, 405, 408 (2000). "We review the state court's last

21

reasoned decision." *Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010). Here, the last reasoned decision addressing Towery's *Eddings-Tennard* claim is the decision of the Arizona Supreme Court affirming Towery's conviction and sentence on direct review.[3]

The state supreme court's decision is not contrary to Supreme Court precedent. The Arizona Supreme Court recognized that "a sentencer may not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence offered by the defendant as a basis for a sentence less than death." *Towery I*, 920 P.2d at 311 (quoting *Penry*, 492 U.S. at 318) (internal quotation marks omitted). It recognized that, "[h]aving considered family background during the penalty phase, the sentencer must give the evidence such weight that the sentence reflects a 'reasoned moral response' to the evidence." *Id.* (quoting *Penry*, 492 U.S. at 319). It also recognized that "[t]he sentencer therefore

---

[3] Towery suggests we review the decisions of the sentencing court and the state supreme court together. "When more than one state court has adjudicated a claim, we analyze the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). The AEDPA inquiry applies "to a single state court decision, not to some amalgamation of multiple state court decisions." *Id.* at 1093. We have considered more than one decision when "the last reasoned decision adopted or substantially incorporated the reasoning from a previous decision and, as a result, it was reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." *Id.* Our focus here is on the independent review conducted by the state supreme court in the last reasoned state-court decision.

22

must consider the defendant's upbringing if proffered but is not required to give it significant mitigating weight. How much weight should be given proffered mitigating factors is a matter within the sound discretion of the sentencing judge." *Id.* These were all correct statements of the law.

The supreme court also said that "a difficult family background is not always entitled to great weight as a mitigating circumstance"; that "family background may be a substantial mitigating circumstance when it is shown to have some connection with the defendant's offense-related conduct"; and that where the defendant fails to connect his family background to his criminal conduct, a trial judge could give it little or no weight or value. *Id.* These statements too were not contrary to Supreme Court precedent. *See Schad v. Ryan*, ___ F.3d ____, No. 07-99005, 2011 WL 5433763, at *14 (9th Cir. Nov. 10, 2011) (per curiam) ("The United States Supreme Court has said that the use of the nexus test [to assess the quality and strength of the mitigation evidence] is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence." (citing *Eddings*, 455 U.S. at 114-15)), *petition for reh'g en banc filed* (Nov. 23, 2011).

The supreme court also "independently weigh[ed] the mitigating evidence against the aggravating circumstances to determine whether leniency [wa]s called

23

for." *Towery I*, 290 P.2d at 310. As part of that review, the court considered whether evidence of Towery's difficult childhood should be given substantial weight. *See id.* at 311. Agreeing with the sentencing court, it accorded this evidence "little or no mitigating value" because Towery "failed to connect his family background to his criminal conduct." *Id.* The evidence was entitled to little or no weight because it did "not prove a loss of impulse control or explain what caused him to kill." *Id.* These statements too were not contrary to Supreme Court precedent.[4]

One could question the *wisdom* of the Arizona Supreme Court's decision to accord Towery's evidence little or no weight. *See Lambright v. Schriro*, 490 F.3d 1103, 1115 (9th Cir. 2007) (per curiam) (explaining that "evidence relating to life circumstances with no causal relationship to the crime," such as "a defendant's disadvantaged background, emotional and mental problems, and adverse history, . . . might cause a sentencer to determine that a life sentence, rather than death at the hands of the state, is the appropriate punishment for the particular defendant");

---

[4] Towery does not argue that the state supreme court's finding that the sentencing court used a nexus test as a weighing mechanism rather than as a screening mechanism was an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2). *See Lopez v. Schriro*, 491 F.3d 1029, 1037-38 & n.2 (9th Cir. 2007) (treating the state supreme court's determination of the sentencing court's actions as a question of historical fact subject to review for objective unreasonableness under § 2254(d)(2)). We therefore do not reach that issue.

24

*cf. Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam) (holding that petitioner's evidence of a troubled childhood "was relevant for mitigation purposes" notwithstanding the petitioner's failure to establish a nexus between his background and his crime); *Tennard*, 542 U.S. at 287 ("[W]e cannot countenance the suggestion that low IQ evidence is not relevant mitigating evidence . . . unless the defendant also establishes a nexus to the crime.").

However, the court's *reasoned and individualized* decision to give Towery's evidence little or no weight was not contrary to Supreme Court precedent. *See Eddings*, 455 U.S. at 114-15 ("The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence."); *Schad*, 2011 WL 5433763, at *14 ("The United States Supreme Court has said that the use of the nexus test [in assessing the quality and strength of the mitigation evidence] is not unconstitutional because state courts are free to assess the weight to be given to particular mitigating evidence"). The record supports the conclusion that the Arizona Supreme Court gave Towery's difficult childhood little or no

weight as a matter of *fact*, after giving individualized consideration to the evidence, rather than treating the evidence as irrelevant or nonmitigating as a matter of law.[5]

Towery points out that the Arizona Supreme Court in its *Towery* decision referred to *State v. Wallace*, 773 P.2d 983, 985-86 (Ariz. 1989), a decision we have deemed constitutionally suspect, *see Schad*, 2011 WL 5433763, at *13. Towery also points to the Arizona court's subsequent interpretation of *Towery*, *see State v Hoskins*, 14 P.3d 997, 1021-22 (Ariz. 2000), that suggests the court may have cited *Towery* as supporting an analysis now constitutionally infirm. But this does not require us to hold the Arizona court committed constitutional error in *Towery* itself. The Arizona court's opinion as a whole indicates the court understood Supreme Court precedent and applied it correctly. Our review must be of the record in *Towery* itself, rather than the state supreme court's subsequent interpretations of *Towery*. *See Lopez v. Ryan*, 630 F.3d 1198, 1203 (9th Cir. 2011)

---

[5] Because we conclude that Towery's *Eddings-Tennard* claim would not satisfy § 2254(d), we do not address the constitutional merits of the claim. *See Frantz v. Hazey*, 533 F.3d 724, 736-37 (9th Cir. 2008) (en banc) (discussing the relationship between the AEDPA analysis under § 2254(d)(1) and the analysis of the constitutional claim on the merits). We also do not address whether, if there was constitutional error by the sentencing court, the supreme court's independent review cured it. *See Richmond v. Lewis*, 506 U.S. 40, 49 (1992) (holding that a state appellate court can cure a sentencing error in a capital case when "the state appellate court . . . actually perform[s] a new sentencing calculus"); *Clemons v. Mississippi*, 494 U.S. 738, 741, 750-51 (1990). The state does not invoke the cure doctrine or argue that the supreme court performed a new sentencing calculus here.

26

(explaining that we review "the *record*," to determine whether "the state court applied the wrong standard," and we "cannot assume the courts violated . . . constitutional mandates" otherwise (alteration in original) (emphasis added) (internal quotation marks omitted)). Considering *Towery* itself, we conclude that it was not contrary to Supreme Court precedent – a conclusion we have noted before. *See id.* at 1203-04 & n.4 (citing *Towery* as a decision in which the Arizona Supreme Court "properly looked to causal nexus only as a factor in determining the weight or significance of mitigating evidence"). Even if subsequent Arizona Supreme Court interpretations of *Towery* were relevant to our analysis, Arizona's case law in this regard is conflicting. *See State v. Sansing*, 26 P.3d 1118, 1129 (Ariz. 2001) (citing *Towery* for the proposition that the "sentencer therefore *must consider* the defendant's upbringing if proffered but is not required to give it significant mitigating *weight*." (emphasis added) (quoting *Towery*, 290 P.2d at 311) (internal quotation marks omitted)), *judgment vacated on other grounds by Sansing v. Arizona*, 536 U.S. 954 (2002). Indeed, Towery's counsel conceded at oral argument that we should not base our analysis on this conflicting Arizona case law, but should instead confine our review to the record of *Towery*.

We conclude that the district court applied the correct legal rule for the relief requested on this claim, and the court did not make an "illogical[ or] implausible"

27

determination when it concluded that Maynard's actions did not amount to an extraordinary circumstance warranting relief under Rule 60(b)(6). *Hinkson*, 585 F.3d at 1262-63; *see also Gonzalez*, 545 U.S. at 535. At most, Towery alleges a claim of negligence, which falls far short of a claim of abandonment. Towery was neither subjected to "egregious" professional misconduct, *Holland*, 130 S. Ct. at 2563-64, nor "left without any functioning attorney of record," *Maples*, 132 S. Ct. at 927.

## IV. CONCLUSION

In sum, even assuming attorney abandonment could constitute an exception to the statutory bar on second or successive habeas petitions, Towery has not shown that he was abandoned in this case. Nor has he shown a serious breach of loyalty that might have severed his agency relationship with counsel. The district court therefore properly treated Towery's Rule 60 motion as a second or successive petition and did not abuse its discretion by denying the motion. *See* 28 U.S.C. § 2244(b)(2), (b)(3)(A).

**AFFIRMED.**

Towery's emergency motion for a stay of execution, filed February 24, 2012, is premised on the merits of his Rule 60(b)(6) motion. Given our affirmance

28

of the denial of the Rule 60(b)(6) motion, Towery's emergency motion is hereby

**DENIED**.

## Counsel

Jon M. Sands, Federal Public Defender; Therese M. Day (argued), Dale A. Baich and Kelly L. Schneider, Assistant Federal Public Defenders, Phoenix, Arizona, for petitioner-appellant.

Thomas C. Horne, Attorney General; Kent E. Cattani, Division Chief Counsel, Criminal Appeals/Capital Litigation Division; Jeffrey A. Zick, Section Chief Counsel; Jon G. Anderson (argued), Assistant Attorney General, Capital Litigation Division, Phoenix, Arizona, for respondent-appellees.