**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTT D. CLABOURNE, *Petitioner-Appellant*, v. CHARLES L. RYAN, *Respondent-Appellee*. | No. 09-99022 D.C. No. 4:03-cv-00542-RCC OPINION |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
December 4, 2012—Pasadena, California

Filed March 5, 2014

Before: Marsha S. Berzon, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel affirmed in part and vacated in part the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition claiming that the state court refused to consider mitigating evidence and ineffective assistance of counsel.

The panel first affirmed the district court's denial of petitioner's claim that the state supreme court refused to consider mitigating evidence of petitioner's mental condition at sentencing, because the record reflected that the state court did give weight to such evidence. The panel was unpersuaded by petitioner's argument that the state court applied a causal nexus test to the evidence.

The panel issued a certificate of appealability as to two claims of ineffective assistance of counsel at resentencing (petitioner was resentenced to death after his initial capital sentence was reversed). The panel vacated the denial of relief as to petitioner's procedurally defaulted claim that counsel was ineffective for failing to object to the sentencing court's consideration of a confession that petitioner had given to the police in 1982. The panel explained that there may be merit to petitioner's claim, and remanded for the district court to consider the claim in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the denial of relief as to petitioner's claim that counsel was ineffective by filing to obtain additional mitigating evidence.

---

## COUNSEL

S. Jonathan Young, Williamson & Young, PC, Tucson, Arizona, for Petitioner-Appellant.

Jeffrey A. Zick (argued), Office of the Attorney General, Phoenix, Arizona; Kent Cattani and Amy Pignatella Cain, Office of the Attorney General, Tucson, Arizona, for Respondent-Appellee.

---

## OPINION

CLIFTON, Circuit Judge:

Petitioner Scott Clabourne was convicted of murder and was sentenced to death in 1982. His first petition for federal habeas relief was denied by the district court as to his conviction but was granted as to the capital sentence. That decision was affirmed by our court in *Clabourne v. Lewis*, 64 F.3d 1373 (9th Cir. 1995). Clabourne was resentenced in state court in 1997, and he was again sentenced to death. His petition for federal habeas relief from that sentence was denied by the district court, and he appeals that denial to this court.

The district court certified one issue for appeal, based on Clabourne's argument that the Arizona Supreme Court

refused to consider mitigation evidence contrary to *Eddings v. Oklahoma*, 455 U.S. 104 (1982), specifically evidence regarding his mental illness. We affirm the district court's denial of this claim because the Arizona Supreme Court did in fact consider, and gave weight to, Clabourne's mental condition.

Clabourne asks us to issue a certificate of appealability for other claims. After consideration, we decline to certify most of those claims, as they lack merit, even measured by the low standard for issuing a certificate of appealability under 28 U.S.C. § 2253.

We do issue a certificate of appealability as to two additional claims. Both allege ineffective assistance of counsel at the 1997 resentencing. The district court denied habeas relief as to those claims because they had been procedurally defaulted due to Clabourne's failure to present them properly to the state court. Subsequent to the district court's order, the Supreme Court in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), opened a narrow path to excuse procedural default in certain circumstances. In light of *Martinez*, we vacate the district court's denial of habeas relief as to one of Clabourne's ineffective assistance claims: the claim based on the failure of his counsel at resentencing to object to the court's consideration of a confession Clabourne had given to the police in 1982. We remand that claim to the district court for further proceedings. As to the other claim, however, regarding the alleged failure of resentencing counsel to submit additional psychological evidence, we affirm the denial of habeas relief.

In sum, we affirm the denial of habeas relief as to all but one claim. On that claim, we vacate the denial of habeas relief and remand for further proceedings.

## I. Background

We previously described the facts of this case in *Clabourne*, 64 F.3d at 1375–77, which led to Clabourne's resentencing. They have not changed. We will briefly summarize those facts and add the subsequent history that is pertinent to Clabourne's current claims.

The victim, a 22 year old student at the University of Arizona, was murdered in September 1980. That night, she left the Green Dolphin bar in Tucson with Clabourne, Larry Langston, and Edward Carrico. The next morning, her body was found naked and wrapped in a sheet, lying in a dry river bed. She had been severely beaten, raped, strangled, and stabbed in the chest.

Her killers remained unknown for almost a year. A tipster then reported to the Tucson police that her boyfriend, Scott Clabourne, had on several occasions admitted that he had been involved in a murder. When the tipster came forward, Clabourne was already in custody on unrelated burglary charges, for which he was represented by counsel and had filed a written invocation of his right to remain silent or have an attorney present for questioning.

Detectives interviewed Clabourne at the Pima County Jail. Clabourne gave a detailed confession. Clabourne, Langston, and Carrico convinced the victim to leave the bar with them and took her to Langston's friend's house. There, they forced her to remove all of her clothes and to serve them

drinks. Then they repeatedly raped her before Clabourne strangled her with a bandana and stabbed her.

Clabourne was charged with first degree murder, sexual assault, and kidnapping. The court found Clabourne competent to stand trial. He was tried alone and was the only one of the three offenders to go to trial: Langston pleaded guilty to first degree murder, and Carrico pleaded guilty to hindering the prosecution.

Clabourne's confession was an important part of the case against him, but it was not the only evidence. In addition to his taped confession to the detectives, Clabourne had also confessed his involvement in the rape and murder to several other people, and several witnesses testified to incriminating statements made by him. Clabourne confessed to a prison guard that he and a friend had sex with a girl and then killed her. Another prison guard overheard Clabourne say to a fellow inmate, "Yeah, I raped her. She didn't want it but I know she liked it." Prosecutors corroborated Clabourne's confession with additional evidence. A witness identified Clabourne as one of the men who left the Green Dolphin with the victim. Clabourne's girlfriend testified that he had told her about strangling a girl and that the bandana used to strangle the victim was similar to one that belonged to Clabourne.

Clabourne called only one witness in his defense, Dr. Sanford Berlin, a psychiatrist. Dr. Berlin had treated Clabourne at the University of Arizona Medical Center several years earlier. But Clabourne's trial counsel did not contact Dr. Berlin until the day of trial, so he had no opportunity to update his observations and little opportunity to prepare to testify. Not surprisingly, under those

circumstances, his testimony was of little help to Clabourne's defense. On the subject of Clabourne's mental condition, the State called two psychiatrists, Dr. Gelardin and Dr. LaWall, who testified that Clabourne was legally sane at the time of the murder.

The jury returned a unanimous guilty verdict. Clabourne was sentenced to death, and his capital sentence was affirmed by the Arizona Supreme Court. He exhausted his state post-conviction remedies on his conviction and his original sentence, but he failed to obtain relief.

Clabourne then sought federal habeas relief. In his September 1993 federal habeas proceeding, Clabourne presented evidence in support of his claim that he received ineffective assistance of counsel at his initial trial and sentencing.

Doctors LaWall, Gelardin, and Berlin all testified again at the federal evidentiary hearing on Clabourne's first petition for a writ of habeas corpus. In contrast to the incomplete records the doctors received prior to trial, before the evidentiary hearing they received records of Clabourne's full medical history regarding his mental health issues. Their testimony changed considerably, to Clabourne's benefit.

Dr. Berlin testified that Clabourne suffered from some form of schizophrenia. Dr. Gelardin testified that, in light of Clabourne's entire mental health record, which had not been provided to him at the time of trial, Clabourne likely suffered from schizophrenia. He testified that Clabourne had a childlike way of responding to the world and had grandiose thought processes that made him prone to manipulation. Dr.

LaWall similarly supplemented his testimony at trial with opinions favorable to Clabourne.

The district court granted Clabourne habeas relief on the grounds that Clabourne received ineffective assistance of counsel at sentencing. It held that trial counsel was ineffective because he failed to obtain medical records that supported Clabourne's claims that he suffered from mental illness and because he failed to properly prepare Dr. Berlin or any expert witness in support of mitigation. *Clabourne*, 64 F.3d at 1387 (affirming the district court's ruling that Clabourne's trial counsel's performance at sentencing "amounted in every respect to no representation at all") (internal quotations, citation, and alteration omitted). The district court granted Clabourne's petition for a writ of habeas corpus as to the capital sentence phase of Clabourne's trial, and this court affirmed. *Id.*

Clabourne was resentenced by the state court in 1997. A different judge from outside of Pima County presided over the proceedings. The same counsel who had successfully represented Clabourne in the federal habeas proceedings represented him at resentencing. Clabourne's attorney submitted to the resentencing court the entire record that was created in the 1993 federal habeas proceedings, including the evidence regarding Clabourne's mental condition. The resentencing court also considered the state trial, sentencing, and appellate records.

The resentencing court found that the State proved an aggravating circumstance under Ariz. Rev. Stat. § 13-703(F)(6), *renumbered at* 13-751(F)(6), namely that Clabourne committed the offense in an especially heinous, cruel, or depraved manner. The offense was committed in a

cruel manner, the court held, because the victim consciously suffered beyond the norm experienced by other victims of first-degree murder. Although the cruelty finding was sufficient to establish the (F)(6) aggravating factor, the court also found that Clabourne committed the offense with an especially heinous or depraved state of mind because the facts established that Clabourne showed an indifference to the murder of the victim and a callous indifference to her life.

The resentencing court held that Clabourne failed to establish any statutory mitigating factors, but it found several nonstatutory mitigating factors. The resentencing court found to be mitigating that Clabourne "has a passive personality, is impulsive, and is easily manipulated by others." It held, however, that the mitigating evidence did not outweigh the aggravating circumstances of the crime and sentenced Clabourne to death. Clabourne appealed.

The Arizona Supreme Court conducted an independent review of Clabourne's capital sentence. *State v. Clabourne*, 983 P.2d 748, 753 (Ariz. 1999) (en banc) (hereafter "*Az Clabourne*"). It found that the murder was especially cruel because of the pain and distress visited upon the victim. *Id*. It gave Clabourne's mental illness some nonstatutory mitigating weight but ultimately held that the mitigating circumstances were insufficient to warrant leniency. *Id*. at 753–57. It affirmed Clabourne's death sentence. *Id.* at 759.

Following direct review of his resentencing, Clabourne was appointed new counsel for state post-conviction proceedings. Post-conviction counsel filed several petitions that did not comply with Arizona's procedural requirements for post-conviction proceedings. The Arizona trial court dismissed all claims with prejudice after giving Clabourne's

newly appointed counsel several attempts to cure the deficiencies. Counsel had asserted many claims in the deficient petitions, but he raised only one issue on appeal from the final dismissal of the petition: the constitutionality of Clabourne's judge-imposed capital sentence in light of *Ring v. Arizona*, 536 U.S. 584 (2002) (holding that a jury must decide aggravating factors in capital sentencing). The Arizona Supreme Court denied discretionary review. *Az Clabourne, supra.*

Clabourne initiated the current federal habeas proceeding with a petition under 28 U.S.C. § 2254 filed in the district court, asserting eight claims for relief in his amended petition. He raised two claims of ineffective assistance by his resentencing counsel. Those claims were based on (1) the failure of counsel at resentencing to seek suppression of his 1982 confession; and (2) the failure of counsel to obtain and present an additional evaluation of Clabourne's mental health in support of mitigation. The district court concluded that the claims were procedurally defaulted because they had not been presented to the state courts on appeal or during post-conviction relief proceedings following the resentencing. The district court further held that Clabourne did not establish cause to excuse the procedural defaults. It also denied Clabourne's five other claims, but granted a certificate of appealability on one claim: that the Arizona courts unconstitutionally required proof of a causal nexus between Clabourne's mental health issues and the crime.

Clabourne appeals and requests a certificate of appealability on all claims he asserted in his petition. We grant a certificate of appealability, required under 28 U.S.C. § 2253, on Clabourne's two ineffective assistance of counsel

claims. We deny a certificate of appealability as to the other claims. *See infra* at 20 n.2.

## II. Discussion

We review de novo the district court's decision to deny Clabourne's habeas petition. *Dyer v. Hornbeck*, 706 F.3d 1134, 1137 (9th Cir. 2013). Because the petition was filed after April 24, 1996, the effective date of the Anti-Terrorism and Death Penalty Act of 1996 (AEDPA), its provisions apply. *Jackson v. Nevada*, 688 F.3d 1091, 1095–96 (9th Cir. 2012).

Under AEDPA, a habeas petition cannot be granted unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). AEDPA's "clearly established law" requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in Supreme Court decisions. *See Williams v. Taylor*, 529 U.S. 362, 381–82 (2000). Only Supreme Court precedents are binding on state courts under AEDPA, but our precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents. *Moses v. Payne*, 555 F.3d 742, 759 (9th Cir. 2008); *see also Parker v. Matthews*, 132 S.Ct. 2148, 2155–56 (2012) (reversing the Sixth Circuit for relying on circuit precedent as illustrating "clearly established federal law," where the circuit precedent bore "scant resemblance" to the Supreme Court precedent it was said to illustrate). When applying these standards, we

review the "last reasoned decision" by a state court. *Dyer*, 706 F.3d at 1137.

## A. The Arizona Supreme Court's consideration of Clabourne's mental illness.

We first consider the issue certified by the district court: did the Arizona Supreme Court rule contrary to or unreasonably apply *Eddings v. Oklahoma*, 455 U.S. 104 (1982), by refusing to consider Clabourne's mental illness because there was not a causal nexus between his mental condition and his crimes? Our answer is that it did not. The Arizona Supreme Court considered and gave mitigating weight to Clabourne's mental health problems, so its decision was not contrary to federal law. We affirm the district court's decision to deny Clabourne's *Eddings* claim.

Under the Eighth and Fourteenth Amendments, a sentencing court cannot "refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 114 (emphasis in original). *Eddings* is grounded in the principle that punishment should be based on an individual assessment of the personal culpability of the criminal defendant. *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *abrogated on other grounds by Atkins v. Virginia*, 492 U.S. 304 (2002). The sentencer must be able to give effect to the proffered mitigating evidence. *Id.* A court cannot disregard mitigating evidence because the defendant failed to connect the evidence to the crime. *Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008) (holding that the Arizona Supreme Court unconstitutionally disregarded mitigating evidence of the defendant's post-traumatic stress disorder by requiring the defendant to show that his disorder was causally related to his crime).

When the record reflects that the court considered and weighed the value of the proffered mitigating evidence, even when the court does not specifically cite the mitigating evidence, there is no violation of the principle described in *Eddings*. *Schad v. Ryan*, 671 F.3d 708, 724 (9th Cir. 2011) (holding that the Arizona Supreme Court did not violate *Eddings* when it gave little weight to mitigating evidence because, "[a]bsent a clear indication in the record that the state court applied the wrong standard, we cannot assume the courts violated *Eddings*'s constitutional mandates") (citing *Bell v. Cone*, 543 U.S. 447, 455 (2005)).

Arizona law separates mitigating evidence into two categories, statutory and nonstatutory. There are five statutory mitigating factors under Arizona's capital sentencing statute: mental capacity, duress, minor participation, reasonable foreseeability, and age. Ariz. Rev. Stat. § 13-703(G)(1)–(5).[1] Arizona law also requires the sentencing court to separately consider nonstatutory mitigators, "including any aspect of the defendant's character or any circumstance of the offense relevant to determining whether a capital sentence is too severe." *State v. White*, 982 P.2d 819, 824 (Ariz. 1999) (en banc) (citing, among other sources, Ariz. Rev. Stat. § 13-703(G)).

---

[1] The statute was renumbered in 2009, and is now codified without amendment at A.R.S. § 13-751. Because the Arizona courts and both parties refer to the old numbering, we do the same. Subsection (G)(1), at issue here, provides: "The trier of fact shall consider as mitigating circumstances any factors proffered by the defendant or the state that are relevant in determining whether to impose a sentence less than death, including [whether] . . . [t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution."

The Arizona Supreme Court considered Clabourne's mental health first within the framework of Arizona's statutory mitigation requirements. The court reviewed the proffered expert testimony and Clabourne's mental health records to determine whether the evidence demonstrated that he had an impaired mental capacity under the terms of subsection (G)(1). Two of the experts had testified that Clabourne suffered from mental illness, probably schizophrenia, during the time when the murder occurred, and the third testified that Clabourne had a personality disorder. *Az Clabourne*, 983 P.2d at 754. But there was no evidence of a causal relationship between Clabourne's mental condition and the murder. *Id.* The court noted that in every prior case in which a defendant was held to have demonstrated impaired capacity justifying leniency under A.R.S. § 13-703(G)(1), the mental illness was not only a substantial mitigating factor, it was a major contributing cause sufficiently substantial to outweigh the aggravating factors present. *Id.* (citing *State v. Jimenez*, 799 P.2d 785, 800 (Ariz. 1990)). The court therefore held that "the status of being mentally ill alone is insufficient to support a (G)(1) finding." *Id.*

But that did not end the Arizona Supreme Court's consideration of Clabourne's mental health problems. It again addressed Clabourne's mental illness within its review of nonstatutory mitigation factors. Under Arizona law, "[w]hen a defendant's mental capacity is insufficient to support a (G)(1) finding, the court must consider whether it is a nonstatutory mitigating circumstance." *Az Clabourne*, 983 P.2d at 756. The Arizona Supreme Court held that the resentencing court had considered Clabourne's mental health evidence in its nonstatutory mitigation finding. *Id.* And, conducting its independent review of the evidence, the Arizona Supreme Court stated that Clabourne's passive

personality and vulnerability to manipulation were "rooted to some degree in his mental health problems." *Id.* The court held, "As such, we afford some nonstatutory mitigating weight to Clabourne's mental and personality deficiencies." *Id.* By its own words, the Arizona Supreme Court considered and gave mitigating weight to Clabourne's mental condition.

Clabourne argues nonetheless that the Arizona Supreme Court failed to consider his proffered mental health evidence as mitigation. He contends that Arizona law at the time of his resentencing generally required a causal nexus before giving mitigating weight to a defendant's mitigation evidence. He also asks us to look to decisions of this court that granted habeas relief based on Arizona's application of a causal nexus test, such as *Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008). And, he asserts that subsequent decisions of the Arizona Supreme Court suggest that the court applied a causal nexus requirement because they cite to the *Az Clabourne* decision for support on that issue. *See, e.g.*, *State v. Carlson*, 48 P.3d 1180, 1196 (Ariz. 2002) (en banc); *State v. Phillips*, 46 P.3d 1048, 1060 (Ariz. 2002); *State v. Cañez*, 42 P.3d 564, 595 (Ariz. 2002) (en banc).

We rejected similar arguments in *Schad v. Ryan*, 671 F.3d 708, 722–24 (9th Cir. 2011). In that case, the petitioner argued that Arizona law precluded the Arizona Supreme Court from considering evidence of his troubled background if that evidence did not share a causal nexus with the crime. *Id.* at 723. Rather than look to Arizona law generally, we looked to the Arizona Supreme Court's decision in Schad's case. *Id.* at 724. The Arizona Supreme Court stated that Schad's evidence of a difficult childhood "was not 'a persuasive mitigating circumstance in this case.'" *Id.* (quoting the sentencing court). We noted that this statement reflected

the court's consideration of the mitigating evidence and that there was no part of the record that reflected the court's application of a nexus test to Schad's childhood. *Id.* We held that a federal court sitting in review of a state court decision could not assume that a state court violated *Eddings* without a clear indication from the record that the state applied an unconstitutional rule. *Id.*

We cannot make that assumption here, either. Relief must be justified by the decision adjudicating Clabourne's claim. 28 U.S.C. § 2254(d) (precluding a court from granting a writ of habeas corpus unless "the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"); *see Towery v. Ryan*, 673 F.3d 933, 946 (9th Cir. 2012) ("Our review must be of the record in *Towery* itself, rather than the state supreme court's subsequent interpretations of *Towery*."). A federal court reviewing a state court decision on a petition for a writ of habeas corpus sits in review of the last decision that resulted in the prisoner's incarceration, not subsequent interpretations justifying results in other cases. *Towery*, 673 F.3d at 946. The Arizona Supreme Court's decision here gave "some nonstatutory mitigating weight to Clabourne's mental and personality deficiencies." *Az Clabourne*, 983 P.2d at 756. We cannot construe the court to have violated *Eddings* by giving Clabourne's mental health issues "no weight by excluding such evidence from their consideration." *Eddings*, 455 U.S. at 115 (1982). The Arizona Supreme Court's decision under review was not contrary to federal law, because it considered Clabourne's mental health condition as mitigating evidence. *Eddings* requires no more.

Clabourne's remaining arguments focus on statements made in his case, rather than others, but they do not warrant

relief, either. He argues that the Arizona Supreme Court failed to consider the evidence of Clabourne's schizophrenia because it never mentioned schizophrenia in its discussion of nonstatutory mitigation. He also contends that the prosecutor's arguments at resentencing indicate that the court relied on a causal nexus test. Neither argument has merit.

A state is "free to determine the manner in which a [sentencer] may consider mitigating evidence" so long as those who impose the sentence have the discretion to consider the mitigating evidence. *Kansas v. Marsh*, 548 U.S. 163, 171 (2006) (citing *Walton v. Arizona*, 497 U.S. 639, 652 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002)). Here, the Arizona Supreme Court first summarized the testimony of the three expert witnesses who testified in support of Clabourne's mental illness. It stated, "The record shows Drs. Gelardin and Berlin believed that Clabourne suffered from mental illness, probably schizophrenia, during the time period when the murder occurred." *Az Clabourne*, 983 P.2d at 754. After the court concluded that Clabourne's mental illness did not meet the requirements for statutory mitigation, it examined that evidence through the lens of nonstatutory mitigation. It did not repeat the summary of the evidence. For nonstatutory mitigation, the court held that Clabourne's mental illness was entitled to some mitigating weight. *Id.* at 756.

Clabourne asks us to conclude that the Arizona Supreme Court's failure to mention "schizophrenia" in its discussion of nonstatutory mitigation rendered its decision constitutionally deficient. Clabourne's argument surmises that the court considered schizophrenia in its discussion of Clabourne's "mental illness" for purposes of statutory mitigation, *Az Clabourne*, 983 P.2d at 754, but disregarded

schizophrenia when it later discussed Clabourne's "mental and personality deficiencies" in its analysis of nonstatutory mitigation, because it did not use the word "schizophrenia," *id.* at 756. We cannot draw that inference. It is illogical to conclude that the Arizona Supreme Court considered that diagnosis and explicitly referenced it in one portion of its opinion but forgot it when considering nonstatutory mitigation, discussed just a few pages later in the opinion. The court considered Clabourne's schizophrenia, so it did not rule contrary to federal law.

Clabourne also points to the prosecutor's references to a causal nexus test at the resentencing hearing. This argument lends no support to Clabourne's claim. We only review whether the last reasoned state court decision was contrary to federal law. 28 U.S.C. § 2254(d). Prosecutors' arguments provide no basis for relief, in this context, when the decision does not rely on them. Because the Arizona Supreme Court's adjudication considered Clabourne's mental health record, it complied with federal law. We thus affirm the district court's denial of habeas relief on this ground, the only ground covered by the certificate of appealability issued by the district court.

## B. Ineffective assistance of resentencing counsel and Martinez v. Ryan.

Clabourne asserts two ineffective assistance of counsel claims arising from his resentencing. As noted above, we grant a certificate of appealability as to those issues. One argument is that his resentencing counsel was ineffective in failing to suppress the confession that police obtained after Clabourne invoked his right to counsel. We refer to this as the confession-based ineffectiveness claim. The other argument

is that his resentencing counsel was ineffective in failing to obtain additional psychological examinations to support mitigation. We call this the mitigation-based ineffectiveness claim.

Clabourne concedes that these claims were not exhausted in state court. The confession-based ineffectiveness claim was never raised in state court, and the mitigation-based ineffectiveness claim was abandoned on appeal in state post-conviction proceedings. The district court held that they were procedurally defaulted and that Clabourne failed to establish cause to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that a prisoner may obtain federal review of a procedurally defaulted claim by showing cause and prejudice).

The district court, however, did not have the benefit of the Supreme Court's later decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). We must consider (1) whether *Martinez* opens the door to consideration of Clabourne's procedurally defaulted claims; and (2) if so, whether Clabourne's procedural default can be excused in light of *Martinez*.

1. *Martinez v. Ryan*

Federal review is generally not available for a state prisoner's claims when those claims have been denied pursuant to an independent and adequate state procedural rule. *Coleman*, 501 U.S. at 750. In such situations, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id*. Thus, habeas petitioners can overcome procedural default under this exception only if they are able to make two showings: (1)

"cause" for the default, where the cause is something external to the prisoner that cannot be fairly attributed to him; and (2) prejudice. *Id.*[2]

*Martinez* provides one route by which a habeas petitioner attempting to excuse a procedural bar by showing cause and prejudice can establish "cause." Until the Supreme Court's recent decision in *Martinez*, a prisoner could not demonstrate cause by claiming that he received ineffective assistance of counsel during state post-conviction proceedings. *See Coleman*, 501 U.S. at 752–53 (holding that attorney error is not cause to excuse a default). That barrier was based on the premise, unchanged by *Martinez*, that an individual does not have a constitutional right to counsel in post-conviction proceedings, so the prisoner "must bear the risk of attorney error that results in a procedural default." *Id.* (internal quotations omitted). But in *Martinez*, the Supreme Court announced that in certain narrow circumstances, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," a prisoner may establish "cause" to excuse the procedural default of a claim that the prisoner had received ineffective assistance of counsel at trial or during sentencing proceedings by demonstrating that counsel in the initial-review collateral proceeding was ineffective or there was no counsel in such a proceeding. *Martinez*, 132 S.Ct. at 1315, 1318, 1320. *Martinez* applies to Clabourne's confession-based and mitigation-based ineffectiveness claims because Arizona law

---

[2] *Coleman* also recognized that a prisoner can overcome a procedural default without showing cause and prejudice by "demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." 501 U.S. at 750. This second exception is not at issue in the present case.

required that he raise them in collateral proceedings. *See State v. Maturana*, 882 P.2d 933, 940 (Ariz. 1994) (en banc).

In *Detrich v. Ryan*, 2013 WL 4712729 (9th Cir. Sept. 3, 2013) (en banc), an en banc panel of our court considered the impact of *Martinez*, albeit through four separate opinions, none of which commanded a majority of six out of the eleven-judge panel. An opinion by Judge W. Fletcher announced the judgment, but that opinion was joined in full by only two other judges (Judges Pregerson and Reinhardt). Another judge (Judge Christen) concurred in Section II of Judge Fletcher's opinion and also the result. Judges Nguyen and Watford each concurred in the result, and each wrote a separate opinion. Judge Graber authored a dissent, joined in full by four other judges (Chief Judge Kozinski and Judges Gould, Bea, and Murguia).

Despite the apparent fragmentation, a review of the several opinions reveals at least three important conclusions supported by a majority of the en banc panel. To reach these three conclusions, outlined below, and determine holdings from our court's divided en banc opinions, we adapt for purposes of determining the impact of a fragmented en banc opinion of this court on three-judge panels the approach taken by the First, Third, Seventh, and Eighth Circuits to derive holdings from fragmented Supreme Court decisions.[3] Under

---

[3] By doing so, we do not determine whether the Supreme Court has prescribed the same approach to application of its own fragmented opinions, as the issue is not before us. *See Marks v. United States*, 430 U.S. 188, 193 (1977). There is a circuit split on that question. *Compare United States v. Johnson*, 467 F.3d 56, 62–66 (1st Cir. 2006), *United States v. Donovan*, 661 F.3d 174, 182–83 (3d Cir. 2011), *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724–25 (7th Cir. 2006), *and United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009) *with United*

this approach, we "look to the votes of dissenting [judges] if they, combined with votes from plurality or concurring opinions, establish a majority view on the relevant issue." *United States v. Donovan*, 661 F.3d 174, 182 (3rd Cir. 2011); *see also United States v. Johnson*, 467 F.3d 56, 62–66 (1st Cir. 2006); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724–25 (7th Cir. 2006); *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009).

First, where it is necessary to consider whether a procedural default should be excused under *Martinez* in a case where the district court's holding that there had been a procedural default preceded *Martinez*, and the result is uncertain, we should remand the matter to the district court to let it to conduct such a review in the first instance, if the result is uncertain. *Detrich*, 2013 WL 4712729, at *9 (W. Fletcher, J., plurality) ("[O]ur general assumption is that we operate more effectively as a reviewing court than as a court of first instance. We see no reason why . . . a *Martinez* case should be treated differently[.]"); *id.* at *23 (Nguyen, J., concurring) ("the district court is best situated to apply *Martinez* in the first instance"); *id.*(Watford, J., concurring) ("we should grant petitioner's motion to remand the case to the district court, so that the district court can determine in the first instance whether petitioner's procedural default may be excused under *Martinez*"). The dissent, joined by five judges, disagreed, *see id*. at *27 (Graber, J., dissenting), but the majority voted to remand, and that was the ultimate holding of the case.

---

*States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007), *and King v. Palmer*, 950 F.2d 771, 783 (D.C. Cir. 1991) (en banc).

Second, to demonstrate "cause" – the first part of the showing of "cause and prejudice" required in order to excuse a procedural default under *Coleman* – the petitioner must show that his post-conviction relief counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984); *see Detrich*, 2013 WL 4712729, at \*26 (Graber, J., dissenting) ("A meritorious *Strickland* claim requires a showing of *both* deficient performance *and* prejudice.") (emphasis in original); *id*. at \*23 (Nguyen, J., concurring) ("I agree with the dissent inasmuch as it would require the usual *Strickland* prejudice showing to overcome the procedural default."). A majority of the panel thus explicitly rejected the view expressed in Judge Fletcher's plurality opinion that "a prisoner need show only that his PCR [post-conviction relief] counsel performed in a deficient manner" and "need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC [ineffective assistance of counsel] claim be 'substantial' under the first *Martinez* requirement." *Id.* at \*6 (W. Fletcher, J., plurality).[4]

Third, "prejudice" for purposes of the *Coleman* "cause and prejudice" analysis in the *Martinez* context requires only a showing that the trial-level ineffective assistance of counsel claim was "substantial." Nine of the eleven judges reached that conclusion. Those nine judges were the four judges joining the relevant part of Judge Fletcher's plurality opinion plus the five judges joining Judge Graber's dissent). *Id*. at \*6 (W. Fletcher, J., plurality) ("A prisoner need not show actual prejudice resulting from his PCR counsel's deficient

---

[4] Judge Watford's separate opinion did not express a view as to this issue. That opinion commented only on the need to remand to the district court for further proceedings.

performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement."); *id.* at \*26 (Graber, J., dissenting) ("Under *Martinez*, a court may excuse the procedural default of an IAC claim in cases like this one if the petitioner establishes both (1) cause, . . . ; and (2) prejudice, by showing that the underlying claim of trial counsel's ineffectiveness is 'substantial,' meaning that it has 'some merit.'" (quoting *Martinez v. Ryan*, 132 S.Ct. 1309, 1318)). Only Judge Nguyen took the opposite position. *Id.* at \*23 (Nguyen, J., concurring) ("I also disagree with the dissent to the extent it wrongly reads *Martinez* as modifying *Coleman*'s prejudice prong.").[5]

To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* and *Detrich* require that Clabourne make two showings. First, to establish "cause," he must establish that his counsel in the state post-conviction proceeding was ineffective under the standards of *Strickland*. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318.

---

[5] Judge Watford's separate opinion did not express a view as to this conclusion, either.

There is, to be sure, overlap between the two requirements. Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the post-conviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

Put in terms of the conclusions drawn from *Detrich*, the third conclusion – "prejudice" for purposes of the "cause and prejudice" analysis requires only a showing that the trial-level ineffective assistance of counsel claim was "substantial" – does not diminish the requirement of the second conclusion that petitioner satisfy the "prejudice" prong under *Strickland* in establishing ineffective assistance by post-conviction counsel. To demonstrate that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, it will generally be necessary to look through to what happened at the trial stage. Both Judge Fletcher's plurality opinion and Judge Graber's dissent did so in *Detrich*, discussing the evidence that was or could have been submitted at trial at some length. *See Detrich*, 2013 WL 47122739, at *16 (W. Fletcher, J., plurality) ("we feel compelled, given the dissent, to show that some of Detrich's trial-counsel IAC claims are sufficiently plausible to warrant

remanding to the district court"); *id*. at \*29 (Graber, J., dissenting) ("*none* of [the trial-counsel errors] establishes prejudice, which requires that '[t]he defendant . . . show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different.'" (quoting *Strickland*, 466 U.S. at 694)).

2. Cause in Clabourne's Case

There is no dispute in this case about the deficient performance of Clabourne's post-conviction counsel, as the State concedes that his representation was deficient. Clabourne's post-conviction counsel, who had no experience with Arizona post-conviction proceedings, filed several post-conviction petitions in state court that failed to comply with Arizona's procedural rules. After admonishing the lawyer to comply with the rules and assert valid claims, the Arizona post-conviction court denied all claims with prejudice for his failure to comply. On appeal from that denial by the trial level court, post-conviction counsel abandoned almost all claims, including the two *Strickland* claims arising from Clabourne's resentencing. *Strickland*'s first prong, as applied to Clabourne's post-conviction counsel, is satisfied.

*Strickland*'s second prong requires consideration of whether Clabourne can establish that he was prejudiced by post-conviction counsel's failure to exhaust either of the two claims of ineffective assistance of counsel at resentencing, the confession-based claim or the mitigation-based claim. Under *Strickland*, Clabourne must show that, but for post-conviction counsel's failure to raise those claims, there is a reasonable probability that the result of the post-conviction proceeding would have been different. *Strickland*, 466 U.S. at 694.

We address each claim individually. We conclude that there is sufficient strength to Clabourne's confession-based claim to warrant remanding that claim to the district court, but that the mitigation-based claim is without merit and does not warrant further consideration.

###### a.   Confession-based claim

Clabourne contends that, but for the deficient performance of his state post-conviction counsel in failing to raise the confession-based ineffectiveness claim, there was a reasonable probability that he would have succeeded on his state petition for post-conviction relief. As a result, he argues that his post-conviction counsel's deficient performance satisfies the second prong of *Strickland*.

The argument Clabourne contends his post-conviction counsel should have pursued is that Clabourne received ineffective assistance of counsel at resentencing because his attorney at that stage failed to object to the admission of his confession, which was obtained by detectives while he was in custody and after he had invoked his right to counsel. He argues that the admission of the confession was prejudicial because there was little other evidence, absent the confession, to support the aggravating factor that rendered him eligible for the death penalty. There may be merit to this argument.

In *Arizona v. Roberson*, 486 U.S. 675 at 677–78, 682–83 (1988), the Supreme Court held that a suspect's refusal to answer questions without presence of counsel precluded questioning related to any offense, not just the particular offense for which the suspect invoked his right to counsel. *Roberson* was an extension of the Court's holding in *Miranda v. Arizona*, 384 U.S. 436 (1966), that once a suspect indicates

that he wishes to remain silent, his exercise of the Fifth Amendment privilege must be respected and questioning may not continue. In *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), the Court applied *Miranda* to a suspect's invocation of his right to counsel, holding that when a suspect has invoked his right to have counsel present during custodial interrogation, he cannot be subject to further interrogation. *Edwards* left unanswered the question whether a suspect who invoked his right to counsel after being taken into custody for one crime could be questioned about other crimes for which he had not invoked that right. That was the state of the law at the time of Clabourne's original trial. Later, *Roberson* answered that question, holding that such a suspect could not be questioned about other crimes. 486 U.S. at 684–85. Because an individual's Fifth Amendment right is not offense specific, *Roberson* held, a suspect's request for counsel applies to any questions the police want to ask. *Id.*

The statement given by Clabourne regarding the murder fits that pattern. Law enforcement obtained Clabourne's confession after he had been taken into custody on unrelated burglary charges and after he had invoked his right to have counsel present. Clabourne filed and served on the county attorney's office a written declaration that he was invoking his right to remain silent and that he would not waive his right to the presence of an attorney except through a written waiver that would also be signed by his attorney. Thereafter, detectives received a tip that Clabourne was involved in the murder and went to the Pima County Jail to interview him. There was no written waiver by Clabourne, and detectives did not inform Clabourne's attorney about the interview. Nonetheless, detectives interrogated Clabourne, without his attorney present, and during that interrogation he gave the statement that is the subject of this claim, a statement in

which he described in detail the kidnapping, rape, and murder.

The State does not dispute that Clabourne would benefit from *Roberson* if that decision applied but argues that it did not apply to him. *Roberson* was decided in 1988, after police obtained Clabourne's confession, and after his original trial in 1982. His confession was admitted without error at his trial based on the law as it then stood. *Roberson* does not apply retroactively to cases on collateral review. *Butler v. McKellar*, 494 U.S. 407, 415–16 (1990); *see Clabourne*, 64 F.3d at 1379 (noting that *Roberson* did not apply retroactively on collateral review). The State argues, therefore, that the confession could properly be admitted against Clabourne at his resentencing. We disagree.

The resentencing occurred in 1997. The State acknowledges that Clabourne's statement to the police would not have been admissible against him under the law as it stood in 1997. That the statement might have been admissible at the time of the original trial in 1982 did not make it properly admissible at the resentencing trial in 1997.

A constitutional error occurs, if at all, when a confession is admitted into evidence. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (citing *Kastigar v. United States*, 406 U.S. 441, 453 (1972)). After *Roberson*, Clabourne's confession could not be used against him without violating the Fifth Amendment. *Roberson*, 486 U.S. at 682–83. If a full retrial of Clabourne had been ordered, it would have been required to comply with the then-current constitutional standards. A retrial is not a collateral proceeding.

A resentencing is not a collateral proceeding, either. *See Magwood v. Patterson*, 130 S.Ct. 2788, 2791–92 (2010) (holding that after a federal court grants a writ of habeas corpus as to a petitioner's sentence, any resentencing is an entirely "new judgment"). Constitutional protections apply at the penalty phase just as they do at the guilt phase. *See Estelle v. Smith*, 451 U.S. 454, 462–63 (1981) (holding that there is "no basis to distinguish between the guilt and penalty phases of [a defendant's] capital murder trial so far as the protection of the Fifth Amendment privilege is concerned").

It does not matter that the legal standards might have changed subsequent to the original trial. The proper admission of evidence based on the law as it stood at the time of trial does not mean that the admission of that evidence is invulnerable to any future challenge. It has been held for centuries, for example, that even if the law changed following a trial, "'[t]he general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision.'" *Henderson v. United States*, 133 S.Ct. 1121, 1126 (2013) (alteration in original) (quoting *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281 (1969), and citing *United States v. Schooner Peggy*, 1 Cranch 103, 110 (1801)). That the trial court may not have ruled improperly when it admitted Clabourne's statement into evidence in 1982 does not mean that the same evidence was necessarily admissible in 1997. By 1997 it was established that the admission of Clabourne's statement violated his rights under the Fifth Amendment.

The State offers a related argument that is no more persuasive. It argues that an Arizona statute, Ariz. Rev. Stat. § 13-703(C), required the court at the penalty phase, in this case the resentencing phase, to consider all evidence admitted

during the guilt phase. Clabourne's statement was admitted during the guilt phase of his trial in 1982, so the State argues that the resentencing court was obligated to consider it. But such a state law does not trump federal constitutional protections or the exclusion of evidence required to enforce those protections. Whatever a state might provide in its own statutes, no court can consider evidence that must be excluded under the federal constitution. Under *Roberson*, Clabourne's confession could not properly be used against him at his resentencing in 1997.

That there was a basis to object to the use of Clabourne's statement at resentencing (or to move to suppress it) does not by itself establish that Clabourne suffered from ineffective assistance through resentencing counsel's failure to make that objection. Addressing this claim requires assessing resentencing counsel's performance under both prongs of *Strickland*: (a) whether the failure to object to admission of that confession amounted to deficient performance, and (b) whether there was a reasonable probability that Clabourne would have received a lesser sentence but for resentencing counsel's failure to object to admission of the confession.[6]

---

[6] At this stage of review, the second-prong prejudice inquiry is technically whether there is a reasonable probability that, had PCR counsel raised the confession claim, the state PCR court would have concluded that the *Strickland* prejudice standard was met regarding the alleged ineffective assistance of trial counsel at resentencing. But in practical terms, at least in this case, that amounts to the federal habeas court trying to answer itself the same question that would have been put to the PCR court: whether a different outcome at resentencing by the trial court was reasonably probable, absent deficient performance by resentencing counsel. Here, the information needed to assess this issue is entirely ascertainable from the trial court record. The federal court sitting in habeas need only review the same trial court record that the state PCR court would have reviewed. There is no actual decision by the state PCR

No court has yet evaluated whether the failure to object to the admission of the confession at the resentencing hearing in 1997 constituted ineffective assistance of counsel under *Strickland*. The district court did not have reason, prior to *Martinez*, to analyze Clabourne's confession-based ineffectiveness claim, as it appeared to have been defaulted.

The answer to this question is not obvious to us on appeal. As to prejudice, for example, the evidence is mixed. We note that Clabourne's statement to the police included a detailed description about beating the victim, raping, strangling, and then stabbing her. The Arizona Supreme Court relied, at least in part, on that statement in its aggravation discussion. The court's decision specifically noted, for example, that the victim was forced to undress and serve the men drinks. *Az Clabourne*, 983 P.2d at 753. This fact was found nowhere else in the record. Other facts identified in the Arizona Supreme Court's discussion of the aggravating circumstances were supported by other evidence in the record. Multiple witnesses testified concerning incriminating statements made by Clabourne, including that the victim had been raped and that she had begged for help. Based on the autopsy she performed on the victim, the medical examiner testified at trial about the beating and sexual activity that the victim

---

court, due to the deficient performance by counsel. There is no logical basis for us to conclude that the federal habeas court and the state PCR court would reach different conclusions in answering the same question. Under these circumstances, the two inquiries, in effect, collapse into one, and our inquiry into the reasonably probable conclusion of the PCR court's inquiry into the reasonably probable conclusion of resentencing in the trial court is better treated as a single question. That question is whether there was a reasonable probability that Clabourne would have received a lesser sentence but for resentencing counsel's failure to object to admission of the confession.

suffered before her death, as well as the strangling and stabbing. It is not clear to us that a death sentence would have been imposed at resentencing (and affirmed by the Arizona Supreme Court on appeal) based on the evidence without Clabourne's confession.

Put in terms of *Strickland*'s second prong, we are not sure whether there was a reasonable probability that the exclusion of Clabourne's statement would have made a difference at resentencing. That means, put in terms of *Martinez's* second prong, we are not sure that the underlying claim is substantial. We thus follow our holding in *Detrich* and remand to the district court for it to consider in the first instance whether the previous default of Clabourne's confession-based claims can be excused under *Martinez*.

On remand, the district court must determine whether Clabourne has demonstrated cause and prejudice sufficient to excuse the procedural default. As outlined above, *supra* p. 24, that requires Clabourne to make two showings. First, to establish "cause," he must establish that his counsel in the state post-conviction proceeding was ineffective under *Strickland* by establishing both (a) that post-conviction counsel's performance was deficient, and (b) that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. The State concedes the first prong has been met, so the focus of the district court's review should be on the prejudice prong. Determining whether the result of the post-conviction proceedings would have been different will require consideration of the underlying claim of ineffective assistance by resentencing counsel and the questions of (a) whether resentencing counsel performed deficiently, and (b) whether there was a reasonable

probability that, absent deficient performance at resentencing, the result of the resentencing proceedings would have been different.

If the district court concludes that Clabourne has established "cause" to excuse the procedural default, then it should move to the question of whether he suffered "prejudice" as a result. In that context, though, the answer would be obvious. As outlined, *supra* p. 24, to meet the "prejudice" requirement to excuse a procedural default, it is only necessary for Clabourne to establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S.Ct. at 1318. Under the circumstances of this case, if he succeeds in demonstrating that he was prejudiced by the failure of his post-conviction counsel, he will necessarily have established that there is at least "some merit" to his claim that he suffered ineffective assistance of trial counsel at resentencing.

If the district court concludes that Clabourne has established cause and prejudice sufficient to excuse the procedural default of the confession-based claim, it should proceed to adjudicate that claim on the merits.

### b.   Mitigation-based claim

Clabourne also argues that he received ineffective assistance of counsel at resentencing because his resentencing counsel failed to obtain additional mental health evaluations in support of mitigation prior to his resentencing. The district court dismissed the claim because it was procedurally defaulted. Though *Martinez* now opens a new path to excusing the procedural default, we address the mitigation-

based claim ourselves here because it is clear that the claim fails. *See Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (denying relief under *Martinez* on the record before it because the record regarding trial counsel's performance established that the underlying ineffective-assistance claim failed).

Clabourne presents no argument as to how resentencing counsel's representation with regard to Clabourne's mitigating mental health satisfies either prong of *Strickland*. The history of the case makes evident the flaws in this claim.

Our court previously granted habeas relief to Clabourne because he received ineffective assistance of counsel at his original capital sentencing. *Clabourne*, 64 F.3d at 1384. We held that counsel was ineffective at the original capital sentencing on three grounds related to mitigation:

> (1) counsel called no witnesses in support of a sentence less than death;

> (2) counsel introduced no evidence of Clabourne's history of mental illness; and

> (3) counsel failed to provide any mental health expert with health records sufficient to develop an accurate psychological profile of Clabourne.

*Id.* at 1384–85. We held that Clabourne was prejudiced by this deficient performance, in part, because of the additional mitigating evidence that was available at Clabourne's original sentencing and ultimately presented by Clabourne's federal

habeas counsel to the federal district court in support of his habeas petition. *Id.* at 1384–86.

Clabourne's federal habeas counsel was his resentencing counsel. Before the federal district court on habeas review, Clabourne's counsel:

> (1) called several witnesses to provide testimony in support of mitigation;
>
> (2) introduced Clabourne's full mental health records; and
>
> (3) provided three expert witnesses with Clabourne's full medical records, from which all three concluded that Clabourne suffered from mental illness.

At the evidentiary hearing, three experts testified to Clabourne's psychological disorders in support of mitigation. *See id.* at 1385–86 (comparing the doctors' testimony).

Unlike counsel at the original trial, resentencing counsel developed and submitted an extensive record in support of mitigation. Counsel submitted to the resentencing court the entire record developed before the district court, including the expert testimony. There is no reason to believe that additional evaluation would have yielded more favorable testimony, and Clabourne has not established that it would have.

When state post-conviction counsel raised the claim regarding Clabourne's lack of additional mental health examinations, albeit deficiently under Arizona procedural rules, the Arizona post-conviction court alternatively

addressed the merits and held that resentencing counsel's representation did not fall below prevailing professional norms and that Clabourne failed to establish prejudice because he offered no mitigating evidence that an additional mental examination might have revealed. AEDPA deference applies to this alternative holding on the merits. *See Stephens v. Branker*, 570 F.3d 198, 208 (4th Cir. 2009); *Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008); *cf. Johnson v. Williams*, 133 S.Ct. 1088, 1097–98 (2013) (applying AEDPA deference to federal claim rejected by state court despite state court's failure to expressly dismiss claim on the merits).

The record provides no support for Clabourne's claim that he received ineffective assistance of counsel at resentencing based on a failure to obtain additional psychological examinations. The Arizona court's decision was not contrary to, nor an unreasonable application of federal law. Accordingly, we affirm the district court's denial of Clabourne's petition for a writ of habeas corpus on this claim.

## III.    Conclusion

We vacate the district court's denial of the claim that Clabourne received ineffective assistance of counsel at resentencing based on counsel's failure to object to the admission of his confession to the police. We remand in order to give the district court an opportunity to revisit the

procedural default issue anew in light of *Martinez*. We affirm the district court's denial of Clabourne's petition on all other grounds.[7]

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

[7] Clabourne also raises several other issues that have not been certified for appeal by the district court and for which we decline to issue a certificate of appealability. Those issues are as follows: whether the resentencing court impermissibly failed to consider the disparate sentences of Clabourne's co-defendants as a mitigating factor; whether the resentencing court acted with bias in imposing his capital sentence; whether the resentencing court impermissibly considered victim impact statements; whether Arizona's aggravating factor statute is unconstitutionally vague; and whether the resentencing court acted vindictively. After ordering the parties to submit supplemental briefing on most of the uncertified issues, we applied the certificate of appealability standard articulated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), to all of the uncertified claims. *Miller-El* requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 338 (internal quotations and citation omitted). We agree with the district court's determination that these uncertified claims do not meet this standard. *See Bible v. Ryan*, 571 F.3d 860, 872 n.5 (2009).